The STATE of Ohio, Appellee,

v.

MORTON, Appellant.

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 79436.

Decided March 29, 2002.

</div>

William D. Mason, Cuyahoga County Prosecuting Attorney, and Peter Corrigan, Assistant Prosecuting Attorney, for appellee.

James A. Draper, Cuyahoga County Public Defender, and John T. Martin, Assistant Public Defender, for appellant.

PATTON, Judge.

{¶ 1}  Defendant-appellant Franklin Morton, Jr. appeals his conviction of aggravated burglary with a firearm and aggravated assault with a firearm, as well as his sentence.

{¶ 2}  Defendant, a thirty-six-year-old, 180–pound man, was involved in an altercation with the victim, a fifty-eight-year-old, 140–pound man, in the victim's apartment.  Although neither side disputes that defendant initially was in the apartment with permission, their stories vary regarding how he came to be there. According to the victim, two young women who were staying with the victim invited defendant in.  According to defendant, the victim invited him to share crack cocaine with him and the young women.

{¶ 3}  Once the defendant was in the apartment, the victim asked him to leave. The two men walked from the living room to the kitchen for defendant to leave. When they were near the kitchen door, defendant stated that he refused to leave and a physical altercation between the two men broke out.  Each party claims that the other party started the fight;  defendant says the victim approached him in the living room with a shotgun in an attempt to rob him, and the victim claims he tried to eject the defendant from the apartment and the defendant attacked him.

{¶ 4}  Both sides agree that the fight was particularly brutal.  The victim testified that after defendant had inflicted serious injuries to him, he got a shotgun from his bedroom to scare him off.  Instead of scaring him off with the gun, the victim suffered further serious injuries, and defendant gained control of the gun.  When the police arrived, they discovered defendant holding the shotgun, standing over the semiconscious victim.

{¶ 5}  As a result of defendant's gouging out his eyes, the victim is totally blind.  His empty eye sockets were sewn shut.  He is also missing part of one ear.  The doctors were able to reattach his other ear.

{¶ 6}  Defendant admits he fought with the victim, but claims he fought in self-defense.  He states that he does not remember gouging out the victim's eyes or biting off his ears.  However, while defendant was in the patrol car on the way to the police station, he spit out a portion of the victim's ear.  The defendant incurred a broken nose, bites, and scratches and was treated for his injuries the following day.

{¶ 7}  Defendant was tried by a jury and convicted.  The trial court sentenced him to three years and ten years to run consecutively.  Defendant timely appealed.

{¶ 8}  Defendant states eight assignments of error.  For his first assignment of error, defendant states:

{¶ 9}  I.  "The trial court erred when it denied Mr. Morton's motion to dismiss for want of a speedy trial."

{¶ 10}  Defendant was arraigned on December 1, 2000, at which time the trial was scheduled for December 20, 2000.  Because the prosecutor on the case was in another trial, the court reset the trial for January 2, 2001.  On January 2, defendant requested a referral to the court psychiatric clinic, which the court granted.  The speedy trial time would have expired on January 4.  The court rescheduled the trial for January 25, 2001.  On January 5, the defendant filed a pro se motion for dismissal for expiration of speedy trial time.  The court denied this motion on January 31.

{¶ 11}  Because defendant's attorney had died, he was assigned new counsel on January 19.  When defendant refused to cooperate with the doctor at the psychiatric clinic, the court vacated its referral.  Again at defendant's request, the court reset the trial for February 21, 2001.  Defendant had filed a second pro se motion to dismiss for lack of speedy trial on February 2.

{¶ 12}  Defendant argues in his appeal that the court failed to document its reason for the second postponement of the trial in which it referred him for the psychiatric evaluation, and that therefore it violated R.C. 2945.71 et seq., governing speedy-trial requirements.  Further, he states that Cuyahoga County Crimi-

nal Case Management Rule 23(H) requires that the defendant file a written motion documenting his request to continue a trial and no such motion was filed. However, the trial was not delayed in response to any motion to continue: it was delayed by a defense request for a psychiatric evaluation, which tolls the time for speedy trial as stated in R.C. 2945.72, which states:

{¶ 13} "The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:

{¶ 14} "* * *

{¶ 15} "(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;

{¶ 16} "* * *

{¶ 17} "(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law * * *."

{¶ 18} Both delays which were past the speedy trial time limit were necessary because, first, the defendant requested a psychiatric evaluation, and second, because his attorney had died, which falls under R.C. 2945.72(C).

{¶ 19} The court properly granted a defense request for defendant's evaluation, which necessitated a continuance of trial. The defense raised no objection to the delay in trial at the time the court granted its motion. It is disingenuous for the defendant to now capitalize on the fact that the court granted his request.

{¶ 20} Further, case law exists to support a stay of tolling of the time at the time a request for psychiatric examination is made and granted.

{¶ 21} "On November 7, 1990, [defendant's] attorney requested that [defendant] be examined. On November 8, 1990, the trial court ordered [defendant] to be examined pursuant to R.C. 2945.39. * * * [W]e find that, at the very least, the period of time from November 8, 1990, the date that the trial court granted the motion to examine [defendant] to December 8 1990, the date that the report would have been due pursuant to R.C. 2945.39(C), constitutes a delay necessitated by reason of a proceeding instituted by the accused * * *." *State v. Roberts* (June 12, 1992), Seneca App. No. 13–91–44, 1992 WL 136185.

{¶ 22} In the instant case, the court orally granted the defense motion for psychiatric evaluation, thereby tolling the time for speedy trial from the time the motion was granted, despite the delay resulting from the clerk's office. "When a criminal defendant moves for a psychiatric examination pursuant to R.C. 2945.39

and 2945.37, the running of the time limit for trial is tolled when the motion is granted * * *." *State v. McKean* (Mar. 8, 1990), Fairfield App. No. 31–CA–89, 1990 WL 26207.

{¶ 23} Because the entry granting defendant's request for a psychiatric evaluation, which necessitated a continuance of trial, was a result of a defense motion which was granted by the court at the time it was made, we find that the court properly overruled defendant's motion for speedy trial.

{¶ 24} This assignment of error lacks merit and is overruled.

{¶ 25} For his second assignment of error, defendant states:

{¶ 26} "II. The failure to include the written jury instructions in the record deprived Mr. Morton of his right to due process by impairing his right to an effective first appeal."

{¶ 27} When the trial court was charging the jury, it wrote something on a chalkboard to clarify its instructions. The contents of the chalkboard were not preserved for the record and defendant argues that this failure to preserve the record violated his appeal rights because the record is incomplete. The state argues that the court stated on the record what the contents of the chalkboard were, and that in any event, ample case law supports upholding a conviction even without the complete jury instructions. The state also notes that defendant could have filed an App.R. 9 statement of the writing on the chalkboard, to which defendant counters that the statute, R.C. 2945.10(G), prevails over a court rule. R.C. 2945.10(G) states:

{¶ 28} "The court, after the argument is concluded and before proceeding with other business, shall forthwith charge the jury. Such charge shall be reduced to writing by the court if either party requests it before the argument to the jury is commenced. Such charge, or other charge or instruction provided for in this section, when so written and given, shall not be orally qualified, modified, or explained to the jury by the court. Written charges and instructions shall be taken by the jury in their retirement and returned with their verdict into court and remain on file with the papers of the case.

{¶ 29} "The court may deviate from the order of proceedings listed in this section."

{¶ 30} This court has previously held, however, that when a court has given complete and correct oral instructions to which neither party objects, "this court cannot find the trial court's failure to include the written jury instructions in the record on appeal either constitute[s] harmful error or compromise[s] appellant's right to due process of law." *State v. Cruz* (Jan. 27, 2000), Cuyahoga App. No. 75723, 2000 WL 86291.

{¶ 31}  Although defendant argues on appeal that the court erred in a portion of its jury instruction, the alleged error is in the instruction on aggravated burglary.  The chalkboard instruction occurred during the court's charge on felonious assault, nearly ten pages earlier.

{¶ 32}  Defendant objected neither to the contents of the chalkboard at the time the instructions were given nor to the fact that the contents of the board were not permanently recorded.  Additionally, although the trial court should include all its instructions for review by the appellate court, if the omission is not prejudicial to the defendant, there is no error.  Id.

{¶ 33}  Defendant claimed no error resulting from the failure to include the contents of the chalkboard in the written instruction; rather, he merely states in his appeal that its omission "denied due process and the right to appeal, and requires a new trial."  Appellant brief at 16.  Because he failed to demonstrate how the omission of the contents of the chalkboard prejudiced his right to appeal, when he never appealed the conviction for felonious assault, we find that the failure to include the contents of the chalkboard nonprejudicial and overrule this assignment of error.

{¶ 34}  For his third assignment of error, defendant states:

{¶ 35}  "III.  The trial court denied Mr. Morton due process of law by failing to dismiss the charge of aggravated burglary because of the insufficiency of the state's evidence, or, alternatively, by failing to remove the 'deadly weapon' allegation from the jury's consideration."

{¶ 36}  Defendant argues that the evidence could not have supported a finding of aggravated burglary because his actions did not comply with the requirements of that offense.  He states that the jury would have had to have found, first, that he acted with force, stealth or deception, second, that he trespassed, third, that the trespass took place on the victim's occupied premises, fourth, that he trespassed with the intent to commit a crime, and finally, that while doing so he inflicted physical harm on the victim or he had a deadly weapon under his control.

{¶ 37}  He argues he did not use force, stealth or deceit in order to enter the premises.  Additionally, he argues that there was not enough evidence to support the allegation that he had control over the gun until he was finished assaulting the victim, and that therefore this element of the crime could not be proven.

{¶ 38}  The state counters that when the victim asked the defendant to leave his home, defendant's continued presence in the apartment constituted trespass.  In order to remain in the apartment, defendant struck the victim. They argue that the subsequent assault resulting in the loss of the victim's eyes

and ears was a separate assault, constituting the crime required for the aggravated element of the burglary.

{¶ 39} Aggravated burglary is defined in R.C. 2911.11:

{¶ 40} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

{¶ 41} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

{¶ 42} "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

{¶ 43} "(B) Whoever violates this section is guilty of aggravated burglary, a felony of the first degree."

{¶ 44} The state cites *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, to support its position.

{¶ 45} "[In *Steffen,*] the defendant attacks the legal sufficiency of his conviction for aggravated burglary and of the aggravating circumstance based thereon. His threshold argument maintains that the trial court erred in instructing the jury that one who lawfully enters premises becomes a trespasser subject to conviction for burglary by virtue of the commission of a felony on the premises. Citing this court's holding in *State v. Barksdale* (1983), 2 Ohio St.3d 126, 2 OBR 675, 443 N.E.2d 501, appellant argues that once the privilege to enter the premises is granted, as here, that privilege is not vitiated by the subsequent commission of a felony thereon.

{¶ 46} "We cannot agree with this application of our holding in *Barksdale,* supra. There, the accused entered an automobile dealer's car lot, open to the public, and broke into a locked car. This court struck down the accused's subsequent conviction for breaking and entering on the basis that the state had failed to prove the essential element of trespass. In so holding, we reasoned that the automobile dealer's tacit invitation to the general public to enter the lot was a grant of privilege and that one who entered the lot with the purpose of committing a felony thereon did not relinquish that privilege and, therefore, no trespass had been demonstrated.

{¶ 47} "The instant case is readily distinguishable from *Barksdale.* First, a private home is involved herein while *Barksdale* involved a used car lot open to the general public. The interest of a private person in the inviolability of his

home is materially greater than that of a business owner in his business premises, particularly where the business premises are open to the public. Moreover, a privilege once granted may be revoked. In the case sub judice, unlike in *Barksdale*, the felony committed, once on the premises, was one of violence, directed against a human being who had the ability and the authority to revoke the privilege of initial entry, if that privilege was in fact granted as appellant testified. We note further that R.C. 2911.21(A), defining criminal trespass, provides:

{¶ 48} " 'No person, without privilege to do so, shall do any of the following:

{¶ 49} " '(1) Knowingly enter *or remain* on the land or premises of another * * *.' (Emphasis added.)

{¶ 50} "Under the circumstances of this case, even assuming lawful initial entry, the jury was justified in inferring from the evidence that appellant's privilege to remain in [victim's] home terminated the moment he commenced his assault on her. Appellant does not deny striking [victim] repeatedly before killing [victim]. From that undisputed fact, a powerful inference arises that appellant was no longer privileged to remain in [victim's] home, and that he knew his privilege had been terminated. In our view, this inference is so strong that it excludes the possibility of drawing from the same facts any other reasonable inference supporting a theory of innocence. See *State v. Kulig* (1974), 37 Ohio St.2d 157, 66 O.O.2d 351, 309 N.E.2d 897, syllabus. We find no error in the trial court's instruction to the jury, nor are we persuaded that the state failed to prove the essential element of trespass." (Footnotes omitted.) *State v. Steffen* (1987), 31 Ohio St.3d 111, 114–115, 31 OBR 273, 509 N.E.2d 383.

{¶ 51} The aggravated burglary facts in the case at bar are nearly identical to *Steffen*. Both defendants initially had permission to be in the home. That permission was revoked even more overtly in the case at bar than it was in *Steffen*. The subsequent assault constituted the underlying felony element of the crime of aggravated burglary.

{¶ 52} Defendant also argues that the state failed to prove the element of force, stealth or deception necessary for trespass. On the contrary, there was more than sufficient evidence of the use of force to remain on the premises to constitute trespass. Defendant does not deny repeatedly assaulting the victim, albeit allegedly in self-defense. Whether the assault was self-defense was a fact question for the jury; the harm caused by the assault was certainly clearly demonstrated. As in *Steffen*, the assault was adequate to satisfy the requisite element of force.

{¶ 53} Defendant also argues that the court should not have included the element of the deadly weapon in the jury charge because he claims no evidence

existed to show that he had possession of the gun until after he finished assaulting the victim. One of the police testified that he found defendant standing over the victim with the gun. Although the victim did testify that in the beginning of the assault the defendant did not have control over the shotgun, he also stated that he lost consciousness during the assault. Because the police found the defendant standing over the victim with the shotgun, because the undisputed testimony confirmed that the shotgun was inoperable, and because the victim testified that defendant told him he was going to kill him, sufficient facts exist to support a conviction of assault with the deadly weapon.

{¶ 54} The third assignment of error is overruled.

{¶ 55} For his fourth assignment of error, defendant states:

{¶ 56} "IV. The trial court improperly intruded upon the province of the jury in violation of the United States Constitution, Amendments VI and XIV, and Ohio Constitution Article I, Sections 10 and 16, when it improperly commented upon the evidence by instructing the jury that it could infer certain elements of the crime from certain pieces of evidence presented by the state."

{¶ 57} Defendant argues that the court's instruction to the jury "established a rebuttable presumption that [defendant] trespassed if, in fact the jury found that he assaulted [the victim.]" Appellant's brief at 23. He claims that this instruction relieved the state of its constitutional duty to prove all the elements of the offense.

{¶ 58} The state counters that the court's instruction contained an accurate definition of the crime.

{¶ 59} The court's instruction states:

{¶ 60} "What does trespass mean? It means any entrance or remaining in knowingly made in a structure of another that is unlawful if it is without the authority, consent or privilege to do so. Where a Defendant lawfully entered a residential premises, the privilege to be in or upon this premises can be inferred to have been revoked where the Defendant thereafter committed a violent felony directed against another person in the premises who had the ability and authority to revoke the privilege."

{¶ 61} Ohio Jury Instructions states:

{¶ 62} " 'Trespass' means any entrance (remaining in), knowingly made(done), in a (structure) (residence) (dwelling) (building) of another is unlawful if it is without authority, consent or privilege to do so." 4 Ohio Jury Instructions (2000), Section 511.11(3), at 330.

{¶ 63} Defendant claims that the addition of the language regarding an assault showing a revocation of consent to remain on the premises unduly

prejudiced the defendant by guiding the jury and eliminating the need for the state to prove that permission no longer existed.

{¶ 64} First we note that defendant did not object to this instruction. The plain error standard therefore applies to our analysis.

{¶ 65} As noted in the previous assignment of error, the Ohio Supreme Court ruled in *Steffen* that a jury could infer from a subsequent violent assault that permission to remain on the premises was revoked. This statement of law, therefore, is not incorrect despite its variance from the boilerplate Ohio Jury Instructions.

{¶ 66} The fourth assignment of error is overruled.

{¶ 67} For his fifth assignment of error, defendant states:

{¶ 68} "V. The prosecution violated Mr. Morton's constitutional rights under Article I, Section 10 of the Ohio Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it engaged in improper closing argument that was designed to appeal to the passions and prejudices of the jury and made improper remarks about defense counsel and Mr. Morton."

{¶ 69} Defendant states that the prosecutor made a number of improper statements designed to prejudice the jury against him. First, the prosecutor "urged the jury to return a guilty verdict in order to correct the injustice of [the victim]'s having lost his sight." Appellant's brief at 25. Next, he claims that the prosecutor attacked the defense attorney's veracity when he told the jury that the attorney was employed "to obfuscate, through smokescreens, poke holes so his client may have a chance at some kind of reasonable doubt." Tr. at 552. Defendant also objects to the prosecutor's comments that the evidence was nauseating and that defendant's sexual practice of paying for sex was shocking.

{¶ 70} The state, while not denying the impropriety of the prosecutor's statements, argues that because the evidence against defendant was so overwhelming, nothing the prosecutor did unfairly prejudiced the defendant.

{¶ 71} "Ohio courts have suggested that the effect of counsel's misconduct 'must be considered in the light of the whole case.' See, e.g., *Mikula v. Balogh* (1965), 9 Ohio App.2d 250, 258 [38 O.O.2d 311, 224 N.E.2d 148]. And where misconduct of counsel ' "* * * is of such a prejudicial character that the prejudice resulting therefrom cannot be eliminated or cured by prompt withdrawal, and admonition and instructions from the court of the jury to disregard it, a new trial should be granted, or the judgment reversed, notwithstanding cautions, admonition, and instructions by the trial judge." ' *Book v. Erskine & Sons, Inc.* (1951), 154 Ohio St. 391, 401 [43 O.O. 334, 96 N.E.2d 289].

{¶ 72} "In general terms, the conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial. *State v. Papp* (1978), 64 Ohio App.2d 203, 211 [18 O.O.3d 157, 412 N.E.2d 401]; *State v. Wade* (1978), 53 Ohio St.2d 182, 186 [7 O.O.3d 362, 373 N.E.2d 1244]; *State v. DeNicola* (1955), 163 Ohio St. 140, 148 [56 O.O. 185, 126 N.E.2d 62]; *Scott v. State* (1923), 107 Ohio St. 475, 490–491, 141 N.E. 19. This, then, is the point at which we begin in our analysis of this issue." *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 15 OBR 379, 473 N.E.2d 768.

{¶ 73} The evidence presented was overwhelmingly in favor of conviction. The prosecutor's comment about the nauseating evidence was gratuitous but accurate. His inquiry into the gross sexual imposition question was brief, and although it may have negatively affected the jury's opinion of the defendant, we cannot say that without it the jury would have acquitted the defendant.

{¶ 74} Most disturbing is the prosecutor's comments that the defense counsel was using smoke screens to obfuscate the evidence. In *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883, the prosecutor had also made reference to the defense's use of "smoke screens" in its tactics. However, this case differs significantly from *Smith*. In *Smith*, the prosecutor also referred to the defense's case as a lie and insinuated that he had caused witnesses to perjure themselves. However, "[i]mportant to our disposition of the instant issue is our observation in *Smith* that 'it is not enough that there be sufficient other evidence to sustain a conviction in order to excuse the prosecution's improper remarks. Instead, it must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found defendant guilty.' *Id.*" *Maurer* at 267, 15 OBR 379, 473 N.E.2d 768.

{¶ 75} The record clearly demonstrates that even without the prosecutor's improper conduct, the defendant would have been convicted. The fifth assignment of error is overruled.

{¶ 76} For his sixth assignment of error, appellant states:

{¶ 77} "VI. Mr. Morton was denied his rights to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution."

{¶ 78} Defendant cites his attorney's failure to move for dismissal for want of a speedy trial, failure to object to the victim's testimony concerning how his blindness affected him psychologically, failure to object to the jury instruction regarding trespass, and failure to object to cross-examination concerning a previous conviction for gross sexual imposition on a toddler.

{¶ 79} The standard for finding ineffective assistance of counsel is a high one. The Ohio Supreme Court has adopted the test outlined in *Strickland v. Washing-*

*ton* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, the counsel's performance must be shown "to have fallen below an objective standard of reasonable representation." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. If that finding is made, then it must also be shown that the defendant was prejudiced by counsel's poor performance. Id.

{¶ 80} In the case at bar, defendant relies on counsel's failure to move for dismissal because of a lack of speedy trial as the primary error of counsel. As noted in our response to the first assignment of error, the time had not run for speedy trial because the delays were a result of defendant's motion for psychiatric evaluation and the absence of trial counsel due to the death of the attorney.

{¶ 81} Defendant also argues that counsel's failure to object to the evidence of his gross sexual imposition conviction and his admission that he paid a crack addict $10 for sex was error because it had no probative value and unduly prejudiced the jury against him. While he is correct in saying that this evidence had no probative value, we cannot say that it unduly affected the jury's opinion of defendant. The gruesome and brutal evidence presented in the case was more than adequate to support the conviction and cause the jury to form a negative opinion of defendant. Evidence of an unrelated unsavory act or acts would have been mere drops in the ocean in the evidence in this case.

{¶ 82} Defendant presented no evidence that counsel's failure to object to other acts evidence was not trial strategy. Counsel could have had many valid reasons for not objecting to the evidence.

{¶ 83} Defendant also argues that counsel's failure to object to testimony by the victim of the psychological effects of his blindness was prejudicial. However, a review of the transcript shows that he merely expressed the frustration any normal person would have at being blinded. This testimony is unlikely to have had any prejudicial effect. Counsel may well have decided that objecting to it would be more harmful to defendant's case than allowing the few sentences into evidence. Defendant has failed to show that his attorney's representation fell below a reasonable standard.

{¶ 84} The sixth assignment of error is overruled.

{¶ 85} For his seventh assignment of error, defendant states:

{¶ 86} "VII. The trial court erred when it admitted photos of [the victim's] eyes during the surgery to remove their contents."

{¶ 87} Defendant claims that the admission of the photos of the victim's eyes during surgery was unduly prejudicial and had no probative value. He argues that the state used them to win sympathy for the victim.

58

{¶ 88}   The state counters that the photos were important to demonstrate the amount of damage done in order to show that the appellant intentionally inflicted the injuries.

{¶ 89}   "Under Evid.R. 403 and 611(A), the admission of photographic evidence is left to the discretion of the trial court.   * * * Relevant, non-repetitive photographs, even if gruesome, are admissible if the probative value of each photograph exceeds the prejudicial impact to the accused." *State v. Awkal* (1996), 76 Ohio St.3d 324, 333, 667 N.E.2d 960.

{¶ 90}   A review of the photos in question shows that although they reveal seriously injured eyes, they are no more gruesome than the testimony of the treating physician describing the injuries.   Further, only one photo of each eye was admitted.   Additionally, the jury saw first hand the victim's eyes sewn closed when he gave his testimony and heard his description of how the injuries were inflicted.   The photos merely corroborate that testimony.   We do not find that the admission of these two photos was prejudicial to the defendant.

{¶ 91}   The seventh assignment of error is overruled.

{¶ 92}   For his final assignment of error, defendant states:

{¶ 93}   "VIII.   The trial court erred by ordering consecutive sentences when it failed to make all of the necessary findings required by R.C. 2929.14(E)(4), and failed to give adequate reason for the findings it did make."

{¶ 94}   Defendant argues that the court failed to make the required findings that the "consecutive sentences were needed for public protection or punishment."   Appellant's brief at 33.   He also alleges that the court failed to explain how his criminal record influenced its decision to order consecutive sentences.

{¶ 95}   The state counters that because the court found that it considered the harm defendant caused to the victim "unparalleled in any aggravated burglary or felonious assault case" it had ever heard, and that it was "the worst form of the offense," coupled with the defendant's extensive violent history, the court's reasons "*indicate* that the sentence is necessary to protect the public or punish the offender," and that the sentence "is not disproportionate to the seriousness of the conduct or the danger posed by the offender, and crime, and that the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the defendant's conduct."   (Emphasis added.)

{¶ 96}   The imposition of consecutive sentences is governed by R.C. 2929.14(E)(4), which states:

{¶ 97} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

{¶ 98} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶ 99} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.

{¶ 100} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

{¶ 101} The court stated at the sentencing hearing:

{¶ 102} "The law requires this Court when sentencing under the circumstances with the kind of facts that were presented in this case, to make a determination as to whether the form of your offense, particularly the aggravated burglary, is the worst form of the offense before it imposes a serious sentence with respect to that aggravated burglary.

{¶ 103} "I have reviewed the record. I have found that the hammer [sic] that was occasioned to [the victim] is unparalleled in any aggravated burglary or felonious assault case that I have ever heard.

{¶ 104} "* * *

{¶ 105} "I have taken into consideration the fact that you have committed serious offenses in the past * * *.

{¶ 106} "Based upon your involvement in Case 398956 you are sentenced as follows: In Count 1, the felonious assault charge, you are sentenced to three years at the Lorain Correctional Institution; in Count 2 you are sentenced to the maximum as I indicated as the worst form of the offense, to 10 years at the Lorain Correctional Institute.

{¶ 107} "The sentences are to be served consecutive to one another. * * *"

{¶ 108} The statute requires that in order to impose consecutive sentences, the court must find that the sentences are necessary to either protect the

public or to punish the offender. The court did not address the protection of the public at all in the sentencing hearing. The court also did not specifically state that the sentences were necessary to sufficiently punish the offender. Despite the court's statement that the crime was the worst of its sort that he had ever heard and that he was required to make a finding that it was the worst form of the offense before he could impose a serious sentence, the court did not specifically state that they were necessary to punish the offender. The court did say in so many words that a serious sentence was necessary to sufficiently punish him, but it is safest for the court's words to specifically track the wording of the statute.

{¶ 109} The statute also requires that the court make a finding that the consecutive sentences are not disproportionate to the seriousness of the conduct. Again, it is preferable for the court to state its findings in the same words as the statute in order to avoid appellate scrutiny. The court stated that the offenses were "unparalleled in any aggravated burglary or felonious assault case" he had ever heard and that he was required to assess the seriousness of the conduct prior to imposing the sentence. However, the court, although it did find that the sentence imposed was necessary for the offense, did not state that it did not consider the sentence disproportionate. Even though the court explained why it did not impose the full maximum consecutive sentence possible of fifteen years, stating it was only because defendant had not murdered the victim that the sentence was less than it could have been, the court did not specifically make the finding of disproportionality.

{¶ 110} The next required finding for imposition of consecutive sentences is that either the harm caused was so great or unusual that it required more than one term, or that the offender's criminal history showed that the consecutive sentences were necessary to protect the public from the offender. Although the court did briefly address the defendant's prior criminal history, it made no finding concerning that history that would justify the imposition of consecutive sentences.

{¶ 111} The court did, however, note that it was considering the aggravated burglary and the felonious assault in its consideration in imposing consecutive sentences. However, the omission of a statement that the harm caused by the multiple offenses necessitated consecutive sentences, coupled with the other omissions of specific language in the sentencing requires that this case be reversed for resentencing in compliance with the statute.

{¶ 112} We understand that the requirements of the statute were implicit in the court's sentencing statement. We are compelled, unfortunately, to require more specific findings in order to be consistent with our recent opinions and to provide a clear guideline for all the members of the court to follow.

{¶ 113}  The final assignment of error is sustained.

{¶ 114}  The judgment is affirmed in part and reversed in part to be remanded only for the issue of resentencing.

Judgment affirmed in part,
reversed in part
and cause remanded for resentencing.

PATRICIA ANN BLACKMON, J., concurs.

TIMOTHY E. McMONAGLE, A.J., concurs separately.

JOHN T. PATTON, J., retired, of the Eighth District Court of Appeals, sitting by assignment.

TIMOTHY E. McMONAGLE, Administrative Judge, concurring.

{¶ 115}  While I concur with the majority, I differ as to the reasons for affirming the trial court on the first assignment of error.

{¶ 116}  R.C. 2945.72 states:

{¶ 117}  "The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:

{¶ 118}  "* * *

{¶ 119}  "(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial * * *.

{¶ 120}  "* * *

{¶ 121}  "(H) The period of any continuance granted on the accused's own motion, and the period of an reasonable continuance granted other than upon the accused's own motion * * *."

{¶ 122}  Defendant argues that the time is not tolled until the court's order for psychiatric examination is filed.  He does not dispute that his attorney made the oral motion for the examination on January 2, 2001, which was within the time limits for speedy trial.  Rather, he argues that the order was not actually filed by the clerk's office until January 8, and therefore could not begin to toll the statute of limitations until January 8, four days after the speedy-trial time had elapsed.

{¶ 123}  Defendant misconstrues the courts' interpretation of the statute.  It is true that the courts interpret the speedy-trial statute strictly against the state and require continuances to be filed by the court within the statutory time limit.

"[W]hen sua sponte granting a continuance under R.C. 2945.72(H), the trial court must enter the order of continuance and the reasons therefor by journal entry prior to the expiration of the time limits prescribed in R.C. 2945.71 for bringing a defendant to trial." *State v. Mincy* (1982), 2 Ohio St.3d 6, 9, 2 OBR 282, 441 N.E.2d 571.

{¶ 124} In the case at bar, however, the time was not tolled by a motion for continuance under section (H) of the statute: it was tolled by defendant's motion for psychiatric evaluation to determine competency. "The express language of R.C. 2945.72(B) is broadly worded to include any period in which the accused's mental competency is being determined." *State v. Palmer* (1998), 84 Ohio St.3d 103, 106, 702 N.E.2d 72. Therefore, "[w]hen a defendant places the trial court on notice that he is insane and not competent to stand trial, the court is required to take the necessary means to ascertain if he is competent to stand trial. No further action can be taken to bring a defendant to trial until competency is determined. Therefore, once the trial court is *placed on such notice,* the speedy trial time is tolled." (Emphasis added.) *State v. Wheatcraft* (Oct. 6, 1989), Vinton App. No. 452, 1989 WL 116931, citing *State v. Spratz* (1979), 58 Ohio St.2d 61, 12 O.O.3d 77, 388 N.E.2d 751.

{¶ 125} In *State v. Malone* (Nov. 1, 1984), Montgomery App. No. 8864, 1984 WL 4099, at * 2, the court began tolling the speedy trial time as soon as the defendant's attorney orally requested the psychiatric examination. Similarly, in the case at bar, the court's record clearly reflects that the defense attorney's motion was orally made and orally granted at a pretrial held on January 2, 2001, the day trial was scheduled to begin. The computer entry reflecting this motion indicates that the order was entered into the record and the psychiatric clinic received the referral at 14:33 on January 3. Despite the delay of the clerk's office in time-stamping the entry for journalization, the record clearly reflects that the court was put on notice of defendant's need to establish competency under R.C. 2945.72(B) on January 2 and conveyed the order to the psychiatric clinic on January 3.

{¶ 126} This case is distinguishable from *Mincy* in that the speedy trial time was not tolled by a motion for continuance, but rather by a motion for competency. Once the court was on notice that defendant's competency was in question, it was required to toll the speedy trial time because it was not permitted to proceed until the competency issue was resolved.

{¶ 127} Because defendant's oral motion for psychiatric exam immediately divested the court of authority to continue with trial until the issue was determined, the speedy trial time immediately was tolled on January 2, 2001 and did not begin to run again until the court vacated the referral.