[Cite as *State v. Scales*, 2024-Ohio-2171.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                         :

    Plaintiff-Appellee,          :

                                No. 113229

    v.                                     :

COURTLAND SCALES,                      :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 6, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-682385-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristin M. Karkutt, Assistant Prosecuting Attorney, *for appellee*.

Maxwell Martin, *for appellant*.

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} Defendant-appellant, Courtland Scales, appeals his convictions for the murder of D'Andre Rhone and attempted murder of Donnie Walker and Mario Gay. For the reasons that follow, we affirm his convictions.

## I. Procedural Background

{¶ 2} In May 2023, the state charged Scales in a 13-count indictment accusing him of aggravated murder (Count 1); two counts of murder (Counts 2 and 3); two counts of attempted murder (Counts 6 and 7); four counts of felonious assault (Counts 4, 5, 8-11); one count of discharge of a firearm on or near prohibited premises (Count 12); and one count of having weapons while under disability (Count 13). Except for Count 13, each count contained one-year, 18-month, three-year, and 54-month firearm specifications. Prior to trial, Scales waived his right to a jury trial on Count 13 and all 18- and 54-month firearm specifications. The state tried the remaining counts and specifications to a jury.

## II. Jury Trial

{¶ 3} On October 29, 2021, at approximately 10:40 p.m., an altercation ensued at Rollhouse Entertainment on Bainbridge Road in Solon. The jury watched surveillance video taken from inside the bar that recorded the events as they unfolded.

{¶ 4} Latonya Jonson ("Laytona") testified that she was at Rollhouse celebrating her cousin's birthday when she and Cherell Jones ("Cherell") started talking to two unknown males, who identified themselves as "Delante" and "Boo Man," later identified as Scales and Donnie Walker ("Walker") — the two are cousins. She testified that she and Scales were having a drink, flirting, talking, and hanging out until later that evening when Scales "choked me," which caused her cousin, Terrill Byrd ("Byrd"), to intervene. (Tr. 357-358.) Latonya stated that a fight

broke out and as a result, she left the bar and went to Unkut Lounge in Garfield Heights with her friends.

{¶ 5} Byrd testified that he and his friends, including Brandon (whose surname was unknown), Latonya (his cousin), Antoinette Byrd (his sister), D'Andre Rhone ("Rhone"), and Cherell (his sister-in-law) were celebrating his birthday at Rollhouse. He stated that during the course of the evening, he noticed an unknown male (Scales) holding Latonya by her neck. Byrd testified that he approached Scales and told him, "hey, this is my cousin. You can't be putting your hands on her like that." (Tr. 682.) According to Byrd, Scales responded that Latonya was his "bitch," which prompted Latonya to correct him that "boy, no, I am not." (Tr. *id*). Byrd stated that Brandon then said something to Scales that caused Scales to get "just real aggressive, cussing, loud talking." (Tr. 683.) He testified that as he and Brandon laughed, Scales asked, "[W]hat the F you laughing at? Then he took a swing at [Brandon's] glasses." *Id.* This escalated into a physical altercation, with Scales punching an employee of Rollhouse. Both groups were asked to leave the establishment. Byrd and his friends left and went to Unkut Lounge.

{¶ 6} Later that same night, around 11:45 p.m., a second altercation occurred outside Unkut Lounge on Turney Road in Garfield Heights. The jury watched two surveillance videos taken from outside the bar that recorded the events as they unfolded.

{¶ 7} In state's exhibit No. 2, the video showed a group of people standing on the sidewalk outside Unkut Lounge. The group consisted of Byrd, Rhone,

Brandon, Mario Gay ("Gay"), and Walker; both Latonya and Cherrell walked by and entered the bar. According to Byrd, Walker approached him on the sidewalk and said to him, "Bro, not letting it go. * * * Bro, not letting it go." (Tr. 688-689.) He said that he told Walker it was "fine [because] we about reading to leave anyway. So we'll be gone by the time — at least I'm thinking we'll be gone by the time he get here." (Tr. 689). Unfortunately, Byrd and his friends were not gone when Scales arrived.

{¶ 8} In the video, Walker is seen using his cell phone, and cell phone records confirmed that he was communicating with Scales. (Tr. 860.) The group, including Walker, had moved over to the other side of the bar entrance, where an SUV was parked in a driveway, but obstructing the sidewalk.

{¶ 9} Scales, who was wearing a dark sweatshirt with the hood up on his head and a face mask covering his nose and mouth, then walked across the street. He approached the group of men standing up against the SUV, and Walker approached him. Scales pushed Walker aside, came around from behind the group, and punched Byrd on the left side of the head. Brandon then punched Scales, causing him to fall to the ground. The group attempted to diffuse the situation and separate the men because Scales got up from the ground in a fighting stance with his fists raised.

{¶ 10} Gay, who was working security next door and wearing a shirt with the word "SECURITY" across the front, came over to the scene and adjusted his firearm located on the right side of his hip. He did not draw his firearm, but rather backed

away and around the backend of the SUV with his hands up in the air. Scales then took a few steps back, raised his sweatshirt, retrieved his firearm from his pants, and immediately began shooting.

{¶ 11} The video showed Scales pointing and firing his gun directly toward Brandon and Walker, with Walker getting shot in the abdomen. He then pointed the gun and began rapidly firing toward the right where Rhone and Gay were attempting to escape. Rhone was struck in the neck, and Gay was shot in the left elbow and abdomen. As Scales backpedaled across the street, he continued spraying the crowd with gun fire, aiming back and forth from his right to his left until he reached the center line of the street, where he turned and ran away into the parking lot. As a result of Scales's shooting, Rhone died on November 7, 2021, and Walker and Gay were seriously injured, both requiring surgery.

{¶ 12} Officer Patrick Hace of the Garfield Heights Police Department testified that fourteen 9 mm Luger shell casings were recovered from the scene and ballistic evidence revealed that the casings were all fired from the same weapon — possibly a later-generation Glock or a Smith & Wesson M&P firearm. During a search of Scales's residence, officers discovered two empty gun boxes — one of which was for a Glock 17. Inside the box was a loaded 9 mm magazine clip that contained ammunition made by the same manufacturer as one of the spent shell casings from the scene at Unkut Lounge. Officers also discovered a brown paper bag containing a Glock and a Luger 9 mm caliber magazine. The murder weapon, however, was never recovered.

{¶ 13} Following the state's case, the trial court granted Scales's Crim.R. 29 motion for judgment of acquittal on Count 1, finding that the state failed to present sufficient evidence to support a finding of guilt for aggravated murder.

{¶ 14} Scales did not call any witnesses in his defense but offered four exhibits into evidence.

{¶ 15} After the court charged the jury and the jury started deliberating, the trial court conducted a bench trial on Count 13 and the 18- and 54-month firearm specifications. The state presented testimony and evidence that Scales had prior felony convictions that included firearm specifications.

### III. The Verdict and Sentencing

{¶ 16} The jury found Scales guilty of all remaining counts and the attendant one- and three-year firearm specifications. The trial court also returned guilty verdicts on Count 13 and all 18- and 54-month firearm specifications.

{¶ 17} After merging allied offenses, the state elected that the court sentence Scales on Counts 2, 6, 7, 12, and 13. The court imposed a sentence of 15 years to life in prison on Count 2, concurrent with 11 years on Count 6, 11 years on Count 7, 8 years on Count 12, and 3 years on Count 13. The court also merged all firearm specifications under each relevant count with the 54-month firearm specification and ordered that Scales serve four 54-month consecutive sentences (18 years) for the firearm specifications, prior and consecutive to Count 2, for a total aggregate sentence of 33 years to life in prison.

{¶ 18} This appeal followed.

## IV. Appeal

### A. Sufficiency of the Evidence

{¶ 19} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Cottingham*, 8th Dist. Cuyahoga No. 109100, 2020-Ohio-4220, ¶ 32. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

{¶ 20} In his second assignment of error, Scales contends that the verdicts were not supported by sufficient evidence because the state "failed to produce sufficient evidence that he purposely caused the death of Rhone or acted knowingly regarding any counts related to felonious assault or felonious assault as the underlying offense."[1] In support, he relies on the testimony of Courtney King, security for Unkut Lounge, who testified that the 13-15 shots were not directed toward anyone but that they were going "everywhere." (Tr. 461.) According to

---

[1] Scales also challenges the jury's finding that he did not act in self-defense by incorporating the arguments raised in his second assignment of error challenging the weight of the evidence. As will be discussed, whether the state satisfied its burden of proof regarding self-defense is not appropriate in a sufficiency challenge.

Scales, this testimony proved that he was merely firing his gun "in an attempt to get out of what he perceived to be a dangerous situation" after he saw Gay touch his own firearm, and thus was "not using his firearm with an awareness that people around him would be shot and thus injured or killed." This argument is without merit.

{¶ 21} In Count 2, Scales was convicted of murder, in violation of R.C. 2903.02(A), which provided that he "purposely caused the death" of Rhone. In Counts 6 and 7 (those counts that survived merger), he was convicted of attempted murder, in violation of R.C. 2923.02/2903.02, which provided that Scales "purposely attempted to cause the death" of Walker and Gay. "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).[2]

{¶ 22} "A person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." *State v. Carter*, 72 Ohio St.3d 545, 554, 651 N.E.2d 965 (1995). *See also State v. Robinson*, 161 Ohio St. 213, 118 N.E.2d

---

[2] All of Scales's felonious assault offenses were merged into Counts 2, 6, and 7. Accordingly, we need not address Scales's argument as it relates to the felonious assault findings of guilt. *See State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, ¶ 25 (considering the sufficiency of the evidence challenge only on those convictions surviving merger), citing *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 24 ("conviction" consists of a finding of guilt and a sentence) and *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 138 (merger of kidnapping count with aggravated-robbery and aggravated-burglary counts moots sufficiency-of-the-evidence claim regarding kidnapping count).

517 (1954), paragraph five of the syllabus. "'[A] firearm is an inherently dangerous instrumentality, the use of which is likely to produce death.'" *State v. Seiber*, 56 Ohio St.3d 4, 14, 564 N.E.2d 408 (1990), quoting *State v. Widner*, 69 Ohio St.2d 267, 270, 431 N.E.2d 1025 (1982). When a person fires a gun into a group of people, one can infer intent to cause death. *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 23-24, citing *State v. Turner*, 10th Dist. Franklin No. 97AP-709, 1997 Ohio App. LEXIS 6021 (Dec. 30, 1997).

{¶ 23} Courts, including this court, have previously held that evidence that the defendant shot a gun into a crowd of people is sufficient to establish the purposefulness element of R.C. 2903.02(A). *State v. Kimmie*, 8th Dist. Cuyahoga No. 99236, 2013-Ohio-4034, citing *State v. Williamson*, 8th Dist. Cuyahoga No. 95732, 2011-Ohio-4095, ¶ 19. *See also State v. Hill*, 8th Dist. Cuyahoga No. 87645, 2006-Ohio-6425, ¶ 16 (finding the defendant acted purposely because "[w]hen a person shoots into a retreating crowd of people, it can be inferred that he intended to cause a certain result"); *State v. Brown*, 8th Dist. Cuyahoga No. 68761, 1996 Ohio App. LEXIS 801 (Feb. 29, 1996) (finding sufficient evidence of intent to kill when defendant fired a gun from an automobile at a group of individuals because "[t]he act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence").

{¶ 24} Construing the evidence in favor of the state, we conclude that the evidence was sufficient to allow a rational trier of fact to find that Scales acted with a purposeful intention of causing or attempting to cause death when he aimed and

shot in the direction of individual people and then repeatedly fired his gun in a back-and-forth manner into the crowd of people. Because he acted purposefully, the state presented sufficient evidence supporting Scales's convictions for murder and attempted murder. Accordingly, his second assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶ 25} Scales contends in his first assignment of error that his convictions are against the manifest weight of the evidence because the evidence demonstrated that he acted in self-defense.

{¶ 26} The state's duty to prove beyond a reasonable doubt that a defendant did not act in self-defense is subject to a manifest weight of the evidence review. *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 27. "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541. In a manifest-weight analysis, the reviewing court sits as a "thirteenth juror" and reviews "'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered.'" *Thompkins* at *id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717

(1st Dist.1983). The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *Thompkins* at 386.

{¶ 27} A trier of fact is free to believe all, some, or none of the testimony of each witness testifying at trial. *State v. Jones*, 8th Dist. Cuyahoga No. 108371, 2020-Ohio-3367, ¶ 85; *State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 100. Thus, "[a] conviction is not against the manifest weight of the evidence simply because the jury believed the testimony of the state's witnesses and disbelieved the defendant," *id.*, or the defendant's theory of the case.

{¶ 28} During the trial, Scales's counsel requested a deadly force self-defense jury instruction. Over objection, the trial court provided the instruction. According to Scales, he acted in self-defense because Gay reached for his firearm, causing Scales to draw his own firearm from his waistband and shoot at the crowd of people. The weight of the evidence does not support his argument.

{¶ 29} "Self-defense claims are generally an issue of credibility." *State v. Walker*, 8th Dist. Cuyahoga No. 109328, 2021-Ohio-2037, ¶ 13. "Whether the state disproves any of the elements of self-defense is left to the trier of fact to decide." *State v. Davidson-Dixon*, 2021-Ohio-1485, 170 N.E.3d 557, ¶ 36 (8th Dist.), citing *State v. Morton*, 147 Ohio App.3d 43, 2002-Ohio-813, 768 N.E.2d 730, ¶ 52 (8th Dist.). The burden of proof lies with the state to prove beyond a reasonable doubt that the accused did not use the force in self-defense if the evidence presented at

trial tends to support a self-defense claim. R.C. 2901.05(B)(1). *State v. Gardner*, 8th Dist. Cuyahoga No. 110606, 2022-Ohio-381, ¶ 24

{¶ 30} In order to establish the inapplicability of self-defense, the state must demonstrate (1) that the defendant was at fault in creating the situation giving rise to the affray; (2) that the defendant lacked a bona fide belief that he was in imminent danger of death or great bodily harm or that another means of escape from such danger existed negating the need for the use of deadly force; or (3) that the defendant violated a duty to retreat or avoid the danger. *Walker* at ¶ 14, citing *State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 46 (8th Dist.). Because of the cumulative nature of the elements of self-defense, "the state need only disprove one of the elements of self-defense beyond a reasonable doubt at trial." *Id*. at ¶ 13.

{¶ 31} We initially note that the jury observed the video of the shooting, which permitted it to draw its own conclusions about what occurred that evening, including whether (1) Scales caused the situation by purposely approaching the group and punching Byrd in the back of the head; (2) Gay reached for his firearm, thereby causing Scales to believe he was in imminent danger of death or great bodily harm; and (3) Scales acted in self-defense by spraying the crowd with bullets rather than retreating without using deadly force.

{¶ 32} This court's review of the evidence, sitting as the thirteenth juror, reveals that Scales, who was armed with a firearm, caused the situation by approaching the group of men with whom he just had an altercation at the Rollhouse bar. He then escalated the situation by punching Byrd in the side of the head.

Although Scales was also punched, which caused him to fall to the ground, he stood up in a fighting stance with his fists raised. Even if this court were to believe that Gay was reaching for his firearm, rather than just merely adjusting it, the video was uncontroverted that Gay backed away from Scales with his empty hands raised and moved around the backend of the parked vehicle. Scales, however, stepped back, drew his firearm from his waistband, pointed his gun directly at individuals in the crowd, started shooting, and continued shooting 13 more times.

{¶ 33} Having carefully reviewed the entirety of the evidence presented at trial, we cannot say the trier of fact lost its way or created a manifest miscarriage of justice in finding Scales guilty of murder and attempted murder, despite his claim of self-defense. This is not the exceptional case where the evidence weighs heavily against Scales's convictions. His first assignment of error is overruled.

## C. Effective Assistance of Counsel

{¶ 34} During trial, the state asked Gay basic questions about his age and employment. The state asked him what he did for work, and then asked him, "Is there a reason why you're reluctant to tell us where you [cut hair], sir?" Gay responded, "On the grounds of intimidation." (Tr. 509.) Defense counsel immediately objected and a side-bar conversation occurred where counsel contended that Gay's response was a "mischaracterization. It's highly improper. He's making allegations of intimidation." (Tr. 510.) The stated responded that Gay was a "shooting victim. Generally, shooting victims are afraid to come to court to testify. While he may have used the word 'intimidation,' he hasn't accused anyone

or the defendant, but that's clearly a fear of things. He doesn't want to relay that information in fear of retaliation of coming to court to testify." (Tr. 510-511.) The court agreed with the state, finding, "[T]here's a difference at least in my opinion of being afraid versus you've been intimidated in some way." (Tr. 511-512.) The court overruled counsel's objection but stated that she would afford counsel some leeway during cross-examination to address whether Scales had in fact "intimidated" Gay. The judge cautioned, however, that "if counsel's concern is any negative implication on his client addressing it on cross, it's only going to draw attention to that fact. It's not going to alleviate what you perceive to be any unfair prejudice against your client." (Tr. 511-512.) Defense counsel did not question Gay during cross-examination about his usage of the word "intimidation."

{¶ 35} In his third assignment of error, Scales contends that his trial counsel was ineffective for failing to move for a mistrial or request a curative instruction after the trial court allowed a witness to improperly testify that he was intimated by appellant. He contends that Gay's statement, "on grounds of intimidation," was improper Evid.R. 404(B) evidence and thus counsel should have requested the trial court provide a curative instruction to the jury that Scales had not been charged with intimidation, that no evidence of intimidation was presented, and that the jury should not make any inference in that regard.

{¶ 36} Reversal of a conviction for ineffective assistance of counsel requires that the defendant show that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to deprive the defendant of a fair

trial. *State v. Nieves*, 8th Dist. Cuyahoga No. 111161, 2022-Ohio-3040, ¶ 27, citing *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 109. Deficient performance occurs when counsel's performance falls below an objective standard of reasonable representation. *State v. Bell*, 8th Dist. Cuyahoga No. 105000, 2017-Ohio-7168, ¶ 23. Prejudice is found when "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 37} A defendant has the burden of proving ineffective assistance of counsel and there is a strong presumption that a properly licensed trial counsel rendered adequate assistance. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). As the *Strickland* Court stated, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland* at 689; *see also State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). A defendant's failure to satisfy one part of the *Strickland* test negates a court's need to consider the other. *State v. Hurst*, 12th Dist. Brown No. CA2014-02-004, 2014-Ohio-4890, ¶ 7. In evaluating a claim of ineffective assistance of counsel, a court must be mindful that there are countless ways for an attorney to provide effective assistance in a given case, and it must give great deference to counsel's performance. *Strickland* at 689.

{¶ 38} Scales has failed to demonstrate either deficient performance or prejudice. Counsel's decision not to request a curative instruction falls within the ambit of trial strategy, and debatable trial tactics and strategies do not constitute ineffective assistance of trial counsel. *See, e.g., State v. Lawson*, 64 Ohio St.3d 336, 341, 595 N.E.2d 902 (1992); *State v. Leonard*, 104 Ohio St. 3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 146. Trial counsel may decide to avoid seeking a curative instruction regarding potentially prejudicial evidence for tactical reasons because the instruction might call more attention to the evidence and reinforce jurors' prejudice. *See State v. Barnes*, 8th Dist. Cuyahoga No. 92512, 2010-Ohio-1659, ¶ 69, citing *Strongsville v. Sperk*, 8th Dist. Cuyahoga No. 91799, 2009-Ohio-1615, ¶ 38. Because a reasonable justification existed for not seeking an instruction — it would draw more attention to the issue — we do not find that Scales's counsel was ineffective in failing to ask for a curative instruction.

{¶ 39} We also find that Scales's counsel was not ineffective for failing to ask for a mistrial because Scales's right to a fair trial had not been compromised. An appellant alleging ineffective assistance of counsel because his attorney failed to move for a mistrial must establish that the trial court probably would have or should have declared a mistrial. *State v. Seiber*, 56 Ohio St.3d 4, 564 N.E.2d 408 (1990), citing *State v. Scott*, 26 Ohio St.3d 92, 95-96, 497 N.E.2d 55 (1986). A mistrial should not be ordered in a criminal case merely because some error or irregularity has occurred. *State v. Jones*, 10th Dist. Franklin No. 12AP-1091, 2014-Ohio-674, ¶ 19, citing *State v. Reynolds*, 49 Ohio App.3d 27, 550 N.E.2d 490 (2d Dist.1988).

It is only appropriate when the substantial rights of the accused or prosecution are adversely affected and a fair trial is no longer possible. *Illinois v. Somerville*, 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).

{¶ 40} Based on the record before this court, there is no evidence that the trial court probably would have or should have declared a mistrial. The trial court noted that there was a difference in "being afraid versus you've been intimidated in some way." By overruling the objection, the court concluded that Gay was merely afraid to disclose where he worked. As the state pointed out, shooting victims can be fearful to testify, and after reviewing Gay's entire testimony, we find that he was not accusing Gay of intimidation but merely expressing his concern about testifying. Accordingly, counsel was not ineffective for failing to request a mistrial on this ground.

{¶ 41} Even if counsel should have asked for a curative instruction or moved for a mistrial, Scales has not demonstrated prejudice such that a reasonable probability existed that but for counsel's unprofessional errors, the result of the proceedings would have been different. The video evidence was uncontroverted that Scales caused the affray and then shot at a group of people, killing one and wounding two others. Gay's limited statement was not so unfairly prejudicial to Scales to warrant reversal and a new trial. The third assignment of error is overruled.

**D. Jury Instruction**

{¶ 42} At the close of testimony, defense counsel requested a jury instruction on the offenses of voluntary manslaughter and aggravated assault as inferior offenses of murder and felonious assault. The trial court concluded that based on its review of the relevant case law and the two-part test of serious provocation, no evidence was presented regarding Scales's state of mind to satisfy the second prong, which requires a subjective determination of whether Scales acted under the influence of sudden passion or fit of rage. Accordingly, the trial court denied the request to instruct the jury on those inferior offenses.

{¶ 43} Thereafter, defense counsel requested that the trial court instruct the jury on self-defense, use of deadly force. Following extensive arguments from both the state and the defense, including citation to relevant case law, the court granted the request, finding that based on the conflicting evidence of whether Gay was reaching for his firearm or merely adjusting it, Scales satisfied his threshold burden to warrant a self-defense instruction.

{¶ 44} Scales contends in his fourth assignment of error that the trial court erred by failing to instruct the jury on the offenses of voluntary manslaughter and aggravated assault as inferior offenses of murder and felonious assault, respectively.

{¶ 45} When reviewing a refusal to give a requested jury instruction, an appellate court considers whether the trial court's refusal was an abuse of discretion under the facts and circumstances of the case. *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). Trial courts should ordinarily give a requested jury

instruction if it is a correct statement of the law, it is applicable to the facts of the case, and reasonable minds might reach the conclusion sought by the requested instruction. *Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, at ¶ 42, citing *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 240.

{¶ 46} This court has held that "'in most cases, jury instructions on both self-defense and serious provocation are inconsistent.'" *State v. Bouie*, 8th Dist. Cuyahoga No. 108095, 2019-Ohio-4579, ¶ 47, quoting *State v. Crim*, 8th Dist. Cuyahoga No. 82347, 2004-Ohio-2553, ¶ 14. This is because "[t]he mental states of fear as required for self-defense and rage as required for aggravated assault and [voluntary manslaughter] are incompatible." *State v. Smith*, 8th Dist. Cuyahoga No. 100204, 2014-Ohio-2057, ¶ 52. A theory of self-defense requires proof of fear while aggravated assault and voluntary manslaughter require a showing of a sudden passion or rage. *State v. Hurt*, 8th Dist. Cuyahoga No. 110732, 2022-Ohio-2039, ¶ 37, citing *State v. Betliskey*, 8th Dist. Cuyahoga No. 101330, 2015-Ohio-1821, ¶ 24 (jury instruction on aggravated assault not required where defense theory was self-defense); *State v. Loyed*, 8th Dist. Cuyahoga No. 83075, 2004-Ohio-3961, ¶ 14 (instruction on voluntary manslaughter not required where defense asserted self-defense because the theories were incompatible and "it must be one or the other"); *see also State v. Torres*, 8th Dist. Cuyahoga No. 112812, 2024-Ohio-837, ¶ 10.

{¶ 47} Scales's defense at trial was that he acted in self-defense because Gay reached for his firearm, and thus he acted out of fear; provocation was never alleged. As correctly noted by the trial court, no evidence was elicited at trial regarding

Scales's state of mind or whether he was acting out of rage or sudden passion. Any argument that Scales was provoked by the earlier incident at Rollhouse is misplaced. Past altercations and past verbal threats do not satisfy the test for sufficient provocation where there is sufficient time for cooling off. *State v. Mack*, 82 Ohio St.3d 198, 201, 694 N.E.2d 1328 (1998). Here, approximately one hour passed between the initial fracas at Rollhouse in Solon and Scales's arrival at Unkut Lounge in Garfield Heights. Not only was there sufficient time for Scales to cool off, the two locations are not in close proximity; therefore, Scales had to make the conscious decision to arm himself with his firearm and drive to Garfield Heights to reengage with the group.[3]

{¶ 48} Moreover, we find no merit to Scales's argument that he was sufficiently provoked to use deadly force after getting punched and being knocked to the ground. *See, e.g., State v. Jones*, 2018-Ohio-239, 104 N.E.3d 34, ¶ 17 (4th Dist.) (neither a push nor a punch constitutes sufficient provocation to warrant an aggravated assault instruction).

{¶ 49} Based on the foregoing, the trial court did not abuse its discretion in denying Scales's request to instruct the jury on the offenses of voluntary manslaughter and aggravated assault as inferior offenses of murder and felonious assault. His fourth assignment of error is overruled.

{¶ 50} Judgment affirmed.

---

[3] Cherell Jones testified that during her conversation with Scales at Rollhouse, he told her that he "felt naked without [his] gun." (Tr. 351.)

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
LISA B. FORBES, J., CONCUR

Murder; attempted murder; purposely; self-defense; jury instructions; inferior offenses. - Appellant's convictions for murder and attempted murder upheld where the evidence showed that he acted purposely when he shot into a crowd of people, killing one person, and severely injuring another. The jury properly rejected appellant's claim of self-defense because the evidence showed that the defendant created the situation, escalated the affray, and acted with deadly force despite his perceived threat backing away with his empty hands raised. Trial court properly denied appellant's request for a jury instruction on voluntary manslaughter and aggravated assault as inferior offenses because the instructions were inconsistent with appellant's theory that he acted in self-defense; serious provocation was never alleged.