[Cite as *State v. Gardner*, 2022-Ohio-381.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 110606 |
| v. | : | |
| GAIL GARDNER, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 10, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-653321-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Michael Timms, Assistant Prosecuting Attorney, *for appellee.*

Thomas A. Rein, *for appellant.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant Gail Gardner appeals from her conviction of domestic violence. She was arrested after a physical altercation with her nephew Million Wheeler, who resided with her in her residence. At the bench trial, Gardner

testified on her own behalf and claimed self-defense. On appeal, she argues her conviction was not supported by sufficient evidence and was also against the manifest weight of the evidence. After a review of the trial testimony and applicable law, we find no merit to the appeal and affirm the trial court's judgment.

{¶ 2} On the day of the incident, Gardner was upset that her nephew did not inform her that his mother, Gardner's sister, was in the hospital for a serious medical emergency. The two started to argue and fought with each other. Wheeler called 911, and the police ultimately arrested Gardner for her conduct in the incident. She was subsequently charged with felonious assault, a second-degree felony, and domestic violence, a first-degree misdemeanor.

{¶ 3} The matter proceeded to a bench trial. The state produced the testimony of Wheeler and two police officers who responded to the incident. Gardner testified on her own behalf. The trial court found Gardner not guilty of felonious assault but guilty of domestic violence, and sentenced her to time served for her offense.

**Trial Testimony**

{¶ 4} Wheeler testified that he was on probation for a drug trafficking case in federal court at the time of the incident. On the day of the incident, his aunt was very upset when she found out that her sister was in the hospital for a serious illness but he never informed her of it. She telephoned him to tell him to come home to pick up his belongings because she wanted him out of her residence. When he arrived, she asked him what happened with his mother, and he just ignored her. She

became furious.  While he gathered his belongings, she started to "bump" him with her leg and also put her knee in his forehead.  At one point, she grabbed him, and he pushed her, causing her to fall.  She got up and hit him in the jaw.  She then took his clothes out of the closet and threw them out the front door. After that, she attacked him again.  He tried to restrain her without "doing extra damage" because he was on probation; he grabbed her arms and shoulder while she grabbed him and scratched him.  He tried to restrain her, putting his hands in her neck area.  Wheeler testified that he was in a "state of trauma" because he had to fight his aunt off without hurting her.

{¶ 5} Wheeler further testified that, after the struggle, Gardner went into her room and came out with a metal bat, a "Louisville Slugger," and hit him in his rib cage.  He grabbed the bat, and the two "tussled" over the bat.  When he got hold of the bat and dropped it, she went into the kitchen and grabbed a butcher knife and threatened him with the knife.  She dropped the knife, however, and told him she was going to call his probation officer.  At that point, Wheeler stepped outside the house and called 911.

{¶ 6} After calling 911, Wheeler went to the kitchen to gather his items there.  Gardner came in and grabbed the spice jars from his hand and threw them at him.  When he tried to retrieve salad dressings from the refrigerator, she smacked him in the head with the refrigerator door.  When the police officers arrived, he turned around and walked toward the officers.  Gardner threw an item at him, which is

captured in an officer's body camera. Wheeler testified that the officers initially put him in handcuffs but took them off after he gave an account of the incident.

{¶ 7} Officers Wanda Wright and Jonathan Selleny, who were among the officers responding to the domestic violence incident, testified as well. The two officers arrived at Gardner's residence and witnessed Gardner throwing objects at Wheeler's head, which was captured in Officer Selleny's body camera. Wheeler informed Officer Wright that he was hit with a bat, which Wright located in Gardner's bedroom. Officers Wright and Selleny talked to Gardner while the other officers also at the scene talked to Wheeler, who indicated he was defending himself during the altercation. Officer Selleny testified that, based on Gardner's and Wheeler's statements, the officers determined Wheeler's injuries were sustained from trying to defend himself. They determined Gardner was the primary aggressor and placed her under arrest for domestic violence.

{¶ 8} Sergeant Newton, who did not testify, took several photographs of Wheeler. The trial court admitted the photographs, which depicted what appeared to be scratch marks on Wheeler's body, over the objection from the defense on the ground that the photographs were not properly authenticated. In addition to the photographs, an audio tape of Wheeler's 911 call to the police and Officer Selleny's body camera were played at the trial.

{¶ 9} After the state presented its case-in-chief, the defense moved for an acquittal pursuant to Crim.R. 29, arguing that the altercation was a mutual combat and Gardner was protecting herself and that Wheeler's 911 call and the allegation

was a calculated move to avoid a violation of his probation. The prosecutor argued that Gardner's conduct, including throwing an object at Wheeler when his back was turned, did not reflect self-defense. The trial court denied the Crim.R. 29 motion.

{¶ 10} Gardner then testified on her own behalf. She was angry with her nephew Wheeler because she found out her sister was seriously ill at the hospital yet Wheeler, who was living with her at the time, never told her about it. She called him to tell him to move out of her residence. While he was in the house gathering his belongings, she followed him around asking him questions about his mother. Because he ignored her, she argued with him "in his face."

{¶ 11} Gardner testified that, at one point, he pushed her and she fell. She got up and got "in his face" again, and he knocked her down again. She was very upset he put his hands on her and also felt scared. To protect herself, she grabbed a metal bat and "raised up the bat to" Wheeler. She did not hit him with the bat however, and, while she hesitated, Wheeler grabbed the bat and was "slinging [her] around the room with the bat" because she would not let go of the bat. He finally took the bat from her, and the next thing she knew, she was against a wall and he had his hands round her neck, "choking [her] out." Realizing she was losing the fight, she started to gather his belongings and threw them out the door. Because Wheeler pushed her down twice and "choked [her] out," she called 911 too. She steadfastly maintained that she did not hit her nephew with the bat. Her 911 call was not submitted as evidence.

{¶ 12} During the cross-examination of Gardner, the prosecution played a segment of Officer Selleny's body camera where Gardner can be heard saying to the officer, "I tried to punch his ass" and "[n]ext time he puts his hands on [me] he's going to be a dead black man and [I'm] going to be in jail." She, however, testified that she tried to punch Wheeler to protect herself and make sure she did not get hurt.

{¶ 13} At the closing argument, the prosecutor argued that the evidence did not reflect that Gardner acted in self-defense. The defense argued that Gardner repeatedly testified that she had to protect herself and that Wheeler calling the police was merely an attempt to be considered the victim in the altercation in order to avoid a violation of his probation. The defense also argued it was Wheeler, not Gardner, who created the situation leading to the altercation and that Gardner was using reasonable force to protect herself.

**Verdict and Appeal**

{¶ 14} After the trial, the trial court rendered a verdict from the bench and also issued a written decision. Gardner was found not guilty of felonious assault. The trial court found the state failed to prove beyond a reasonable doubt that Gardner caused or attempted to cause physical injury with a deadly weapon. The trial court noted that while Wheeler testified Gardner hit him with a bat, Gardner testified Wheeler grabbed the bat from her. The trial court also noted that the scratching depicted in the photographs were inconsistent with an injury caused by a bat.

{¶ 15} However, the trial court found the state proved its charge of domestic violence beyond a reasonable doubt. The trial court noted that while the testimony of both Gardner and Wheeler indicated Wheeler pushed Gardner and she fell to the ground and he also grabbed her near the throat, Wheeler's testimony indicated these were defensive moves done in an attempt to restrain Gardner. The trial court also noted that the testimony of both parties reflected that Gardner was the initial aggressor. Finally, the trial court noted that, consistent with the testimony, there was a scratch on Wheeler that was visible in the photographs taken by the police at the scene.

{¶ 16} On appeal, Gardner raises the following assignments of error:

I. The trial court erred by failing to grant a judgment of acquittal, pursuant to Crim.R. 29(a), on the charge, and thereafter entering a judgment of conviction of that offense as that charge was not supported by sufficient evidence, in violation of defendant's right to due process, as guaranteed by the Fourteenth Amendment to the United States Constitution.

II. Appellant's conviction is against the manifest weight of the evidence.

III. The trial court erred by ordering Appellant to pay costs in the sentencing journal entry when it stated nothing about court costs on the record.

For ease of discussion, we address the first and second assignments of error together.

**Standard of Review**

{¶ 17} When reviewing a challenge to the sufficiency of the evidence, we review the evidence admitted at trial and determine whether such evidence, if

believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶ 18} While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest-weight challenge questions whether the state has met its burden of persuasion. *Id.* Unlike a claim that the evidence is insufficient to support a conviction, which raises a question of law, manifest-weight challenges raise factual issues. When a defendant argues his or her conviction is against the manifest weight of the evidence, the court,

> "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**Self-Defense**

{¶ 19} In this case, Gardner was convicted of domestic violence under R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." It is undisputed the state produced sufficient evidence establishing all of the elements of domestic violence. Gardner, however, claims her conviction should be reversed because she acted in self-defense during the altercation.

{¶ 20} To prove self-defense, a defendant must prove by a preponderance of the evidence that (1) she was "not at fault in creating the situation giving rise to the affray"; (2) she had a "bona fide belief that she was in imminent danger of death or great bodily harm" and that her only means of escape was in the use of force; and (3) she had not "violated any duty to retreat or avoid danger." *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990).

{¶ 21} Self-defense may be asserted as a defense to a charge of domestic violence. *State v. Zielinski*, 12th Dist. Warren No. CA2010-12-121, 2011-Ohio-6535, ¶ 28. Self-defense is an affirmative defense, and therefore, "a defendant claiming self-defense does not seek to negate an element of the offense but rather seeks to relieve himself from liability." *Cleveland v. Williams*, 8th Dist. Cuyahoga No. 81369, 2003-Ohio-31, ¶ 10, citing *State v. Martin*, 21 Ohio St.3d 91, 488 N.E.2d 166 (1986). A defendant claiming self-defense admits the facts claimed by the prosecution and then relies on independent facts or circumstances to exempt her from liability. *State*

*v. Latessa*, 11th Dist. Lake No. 2006-L-108, 2007-Ohio-3373, ¶ 51, citing *Martin* at 94.

{¶ 22} Therefore, "[a] defendant's assertion on appeal that he has proven self-defense cannot be a sufficiency claim, but rather, must be reviewed under the standard for a manifest weight claim." *Williams* at ¶ 10, citing *State v. Roberts*, 139 Ohio App.3d 757, 768, 745 N.E.2d 1057 (1st Dist.2000).   Therefore, we consider Gardner's claim that her guilty verdict should be reversed under a manifest-weight review.

{¶ 23} We first note that, prior to March 28, 2019, the self-defense statute, R.C. 2901.05, required a defendant claiming self-defense to prove it by a preponderance of the evidence.  On March 28, 2019, the statute was amended to shift the burden of proof to the state and it now requires the state to prove beyond a reasonable doubt that the accused did not use the force in self-defense, if the evidence presented at trial tends to support a self-defense claim. R.C. 2901.05(B)(1).[1]

_____

[1] R.C. 2901.05(B)(1) states:

> A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶ 24} Since the amendment of the statute, it has been settled that, because of the cumulative nature of the elements of self-defense, "the state need only disprove one of the elements of self-defense beyond a reasonable doubt at trial." *State v. Walker,* 8th Dist. Cuyahoga No. 109328, 2021-Ohio-2037, ¶ 13. *See also State v. Jacinto,* 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 46 (8th Dist.); *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 49; *State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 55 (11th Dist.); *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31; and *State v. Nestingen*, 5th Dist. Richland No. 2019 CA 110, 2020-Ohio-2965, ¶ 17.

{¶ 25} The first prong of the self-defense test — whether the defendant was at fault in creating the situation giving rise to the affray — asks, in essence, whether the defendant was the initial aggressor. *State v. Batie*, 8th Dist. Cuyahoga No. 101234, 2015-Ohio-762, ¶ 8. Here, Wheeler testified Gardner was enraged when he ignored her inquiry about his mother's condition and started to "bump" him and, at one point, grabbed him. He tried to restrain her by pushing her, causing her to fall, and when she got up, she hit him in the jaw. While they struggled with each other, she grabbed him and scratched him. A scratch mark was visible in the photographs taken by the police at the scene. Gardner admitted she followed Wheeler around while he gathered his belongings and was "in his face." The trial court found Gardner to be the initial aggressor; in other words, she was at fault at creating the incident leading to the affray.

{¶ 26} "Self-defense claims are generally an issue of credibility." *Walker* at ¶ 13. "Whether the state disproves any of the elements of self-defense is left to the trier of fact to decide." *State v. Davidson-Dixon*, 2021-Ohio-1485, 170 N.E.3d 557, ¶ 36 (8th Dist.), citing *State v. Morton*, 147 Ohio App.3d 43, 2002-Ohio-813, 768 N.E.2d 730, ¶ 52 (8th Dist.). Having carefully reviewed the entirety of the evidence presented at trial, we cannot say the trier of fact lost its way or created a manifest miscarriage of justice in finding Gardner guilty of domestic violence despite her claim of self-defense. The first and second assignments of error are without merit.

**Court Costs**

{¶ 27} Under the third assignment of error, Gardner maintains the trial court erred in imposing the costs of prosecution in its sentencing entry when it was silent about court costs at the sentencing hearing. She argues that the trial court's order of court costs should be vacated.

{¶ 28} In *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, the trial court imposed court costs in its sentencing entry without mentioning costs at the sentencing hearing. However, because R.C. 2947.23 now allows the trial court to exercise jurisdiction to waive, suspend, or modify the payment of the costs of prosecution at the time of sentencing or any time thereafter, the Supreme Court of Ohio concluded that the defendant could file a motion to waive costs without a remand to the trial court, citing R.C. 2947.23(C). *Beasley* at ¶ 265. Pursuant to *Beasley*, Gardner can file a motion to waive court costs in the trial court at any time and a remand of this matter on the issue of court costs is not necessary. *State v.*

*Reed*, 8th Dist. Cuyahoga No. 106796, 2018-Ohio-3187, ¶ 12 (this court need not remand the matter to the trial court in order for appellant to obtain an order waiving court costs — appellant can file a motion to waive court costs in the trial court at any time). *See also State v. West*, 8th Dist. Cuyahoga No. 105568, 2018-Ohio-956. The third assignment of error is without merit.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

ANITA LASTER MAYS, P.J., and
EMANUELLA D. GROVES, J., CONCUR