[Cite as *State v. Bell*, 2025-Ohio-2526.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,               :

    v.                                :

STEVEN BELL,                            :

    Defendant-Appellant.              :

No. 114535

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 17, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-692168-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Dominic Neville, Assistant Prosecuting Attorney, *for appellee.*

Russell S. Bensing, *for appellant.*

EMANUELLA D. GROVES, P.J.:

{¶ 1} In this delayed appeal, defendant-appellant Steven Bell ("Bell") challenges his felonious-assault conviction and argues that a self-defense jury instruction should have been provided. Upon review, we affirm the trial court's decision denying the instruction.

**Procedural History and Facts**

{¶ 2} In May 2024, Bell was indicted by a grand jury in a two-count indictment for offenses perpetrated against his neighbor ("Neighbor"), earlier that month. Count 1 charged Bell with felonious assault, a second-degree felony, and Count 2 charged him with aggravated menacing, a first-degree misdemeanor. Bell pleaded not guilty and filed a Crim.R. 12.2 notice of self-defense five days prior to his September 2024 trial.[1]

{¶ 3} The following evidence was presented by the State. Maple Heights Patrolman Carolyn Cutter-Field ("Officer Cutter-Field") responded to the scene in May 2024 after an assault was reported. When Officer Cutter-Field arrived, she spoke to Neighbor and observed that he had "significant bruising and a bloody face and swelling around his lips and eyes." After speaking to Neighbor, Officer Cutter-Field spoke with Bell. Bell told Officer Cutter-Field that he and Neighbor had an argument over lawn-cutting; Neighbor came at him with a knife; he had to defend

---

[1] Crim.R. 12.2 provides:

> Whenever a defendant in a criminal case proposes to offer evidence or argue self-defense, defense of another, or defense of that person's residence, the defendant shall, not less than thirty days before trial in a felony case and fourteen days before trial in a misdemeanor case, give notice in writing of such intent.

Since the parties did not raise the untimeliness of Bell's notice of self-defense at the trial-court level or on appeal, we decline to independently address the issue.

himself by punching Neighbor in the face; his thumb was bitten during the affray; and he picked up Neighbor's knife and took it into his home. Bell directed his wife to retrieve the knife, but she never brought the knife to Officer Cutter-Field. Officer Cutter-Field took pictures of Bell, Neighbor, and the scene; collected Neighbor's security-camera footage, which was played in open court; and authored a report. Officer Cutter-Field testified that the footage contradicted Bell's initial statement, showing Bell walking over to Neighbor's property, taking a knife out of his pocket, and flipping it open. Officer Cutter-Field explained that Bell was ultimately arrested "[b]ecause he came onto [Neighbor's] property with a weapon."

{¶ 4} On cross-examination, the defense questioned Officer Cutter-Field about her report, emphasizing differences between Neighbor's recounting of events and what could be discerned from his security-camera footage. Officer Cutter-Field testified that the footage, which was only 32-seconds long, did not capture the entire incident. Officer Cutter-Field further testified that at some point during the altercation, Neighbor inadvertently bit Bell's thumb.

{¶ 5} Next, Neighbor offered testimony about his relationship with Bell and the circumstances surrounding their altercation. Neighbor lived in his home for over 20 years. Bell moved next door to Neighbor two years prior to the incident, told Neighbor that his lawnmowing was crooked, and advised Neighbor how to cut his grass. Neighbor testified that he was working in his yard and minding his own business on the day of the incident. Neighbor had a screwdriver in his pocket, which he was using for yard work.

{¶ 6} As Neighbor walked toward his house to retrieve more lawn supplies, Bell came onto Neighbor's property with a knife in his hand. When Neighbor saw the knife, he was scared for his life, terrified, and believed he was being threatened. Bell started punching Neighbor in the face, causing Neighbor's hat to fall off. Neighbor stated, "He c[a]me to my house with anger in his face and all I could do was see that and I felt for my life." Neighbor tried to defend himself and get out of the way but could not see. Neighbor and Bell fell to the ground and Bell "started beating on" Neighbor.

{¶ 7} Neighbor explained that Bell tried to "rip" his jaw open as they were fighting, causing Bell's thumb to enter his mouth. Bell continued to punch Neighbor, preventing Neighbor from releasing Bell's thumb and causing him to bite down. At that point, Neighbor's wife came outside and called the police. Neighbor stated, "[I]f it had not been for my wife, he probably would have killed me because he had his hand around my neck and my wife called the police and the police, they brung me in the house. Then they had the ambulance come over to the house. I was bleeding everywhere."

{¶ 8} Throughout his testimony Neighbor maintained that he defended himself during the fight, felt scared, and did not know what to do. Neighbor believed the fight lasted for about 15 to 20 minutes. Neighbor did not know if Bell suffered any injuries. However, Neighbor's testimony and medical records revealed that Neighbor sustained significant injuries as a result of the fight, including multiple

facial fractures and a broken fibula. Since the incident, Neighbor experienced depression, loss of vision, blurriness, crossed-eyes, headaches, and residual pain.

{¶ 9} On cross-examination, Neighbor was questioned at length about his recounting of events, his injuries, and the security-camera footage. Neighbor testified that he did not say anything to Bell and did not expect to be hit in the face. Neighbor reiterated that after Bell began his unprovoked attack, he had no choice but to defend himself, noting that his jabs and swings "did[ no]t connect." The defense questioned whether Neighbor had a knife or screwdriver that he intended to use to "stick" Bell. Neighbor repeatedly testified that Bell brought a knife into his yard and that he had a screwdriver for yard work, not to "stick" Bell. Neighbor reiterated that Bell punched him in the face several times throughout the fight, which lasted for an extended period, and that he tried to defend and remove himself from the situation. On redirect, Neighbor testified that he never invited Bell over to his property and Bell threw the first punch.

{¶ 10} Finally, Neighbor's wife ("Wife") testified that she was inside their home when she looked outside and saw Bell "beating my husband up." Wife ran outside and yelled at Bell, asking what he was doing and telling him to get off Neighbor. Bell told her that Neighbor bit his hand. Wife testified, "I think he was like in a trance because he just kept beating on my husband." While Bell was on top of Neighbor, Wife saw Bell throw seven or eight punches at Neighbor's face. Bell ran into his house after Wife said she was calling the police. After Wife called the police, she helped Neighbor into the house, noting that he could barely get up. Wife

explained that blood was everywhere and Neighbor was bleeding from his face, eyes, nose, mouth, and ears. Wife was shocked and did not understand why the fight occurred or why Bell was in their backyard without permission.

{¶ 11} The State rested and admitted the photographs taken by Officer Cutter-Field Neighbor security-camera footage, and his hospital records as exhibits without objection. Bell moved for acquittal on all counts under Crim.R. 29. The trial court denied Bell's motion.

{¶ 12} Bell then offered testimony in his own defense. Bell testified that he and Neighbor did not have a neighborly relationship. Bell took great pride in his yard and preferred his grass to be high and deep while Neighbor cut his grass short. Bell claimed that Neighbor was not mowing in a straight line, which resulted in Neighbor cutting Bell's lawn. Bell explained that he and Neighbor came to a verbal agreement about the property line, but Neighbor never kept up his end of the bargain.

{¶ 13} Bell testified that he believed Neighbor purposefully cut his lawn in a zigzag in May 2024, leading to their altercation. According to Bell, he asked Neighbor about the "bad cut" and Neighbor "verbally assaulted" him. Bell approached Neighbor "to address the disrespect" and "defend [his] manhood." Bell did not intend to fight Neighbor. However, Neighbor pulled a knife from his pocket and Bell brandished his own knife in response. Bell then knocked Neighbor hat off his head to get his attention. Bell claimed that he only hit Neighbor's hat not Neighbor's head. Bell testified that the "next minute, we in mutual combat." Bell

claimed that he only blocked Neighbor's punches and was not trying to hit him. Bell further claimed that Neighbor pulled him down to the ground, got on top of him, began hitting him, and "got my thumb in his mouth." Bell started to hit Neighbor because he would not let go of Bell's thumb. Bell stated that Neighbor bit off the tip of his thumb and he now has a "permanent disfigurement." After Neighbor let go of his thumb and Bell saw his injury, he continued to hit Neighbor.

{¶ 14} On cross-examination, Bell claimed he walked from the sidewalk of his front yard into Neighbor back yard "to address the disrespect that [Neighbor] verbally assaulted." Bell testified that Neighbor's "verbal assault" forced him to enter Neighbor's yard. Bell acknowledged that he had a knife with him when he went into Neighbor's yard and flipped it open while on Neighbor's patio. Bell admitted that the fight initiated in Neighbor's yard. After the security-camera footage was played, Bell further admitted that he swung first while holding a knife in his hand, stating: "It's right there, I can't deny it." When comparing photographs of himself and Neighbor following the altercation, Bell acknowledged that "[i]t's obvious that [Neighbor's] face looks worse." Bell testified that he could imagine the pain Neighbor felt and what it was like to have his face beaten in his own backyard.

{¶ 15} Following his testimony, Bell rested and admitted photographs of his thumb and his and Neighbor's yards as exhibits without objection. The State also admitted an additional photograph of Bell as rebuttal evidence without objection. Bell renewed his Crim.R. 29 motion for acquittal. The trial court denied the motion.

{¶ 16} Bell then requested that a duress jury instruction be included. During Bell's argument, the trial court noted that "[w]hat you're really getting at is self-defense." The trial court stated:

It's a clear case of [Bell] starting something that unfortunately for him didn't finish as well as he had hoped. I mean, and I can say that, by the way, even in the light most favorable to . . . Bell. He agrees that he started it, he acknowledges four square what he has, in the little bit of video we have, he's the one that charged on the property and what you want is for him to be allowed to start a fight and then be absolved of any blame because his opponent got the better of him.

After discussing the duress instruction further, Bell proposed a self-defense jury instruction instead. The trial court advised that the self-defense instruction "[c]learly doesn't apply" and "is not available under the circumstances, even viewed . . . in the light most favorable to . . . Bell." The trial court proceeded to charge the jury, and the parties presented their closing arguments.

{¶ 17} Following deliberations, the jury found Bell guilty of felonious assault, as charged in Count 1 of the indictment, and not guilty of aggravated menacing, as charged in Count 2. The trial court imposed a two-year prison sentence, with a three-year-maximum term under the Reagan Tokes Law, and postrelease control for a mandatory minimum of 18-months up to a maximum of three years. (Sentencing Entry, Sept. 16, 2024).

{¶ 18} In November 2024, Bell filed a notice of appeal of the September 2024 sentencing entry along with a motion for leave to file a delayed appeal.[2] This court

---

[2] Pursuant to App.R. 5(A), an appeal from a criminal proceeding may be taken by a defendant after the expiration of the 30-day notice-of-appeal filing deadline with leave of the appellate court. A delayed appeal is a direct appeal: "Once granted, a delayed appeal

granted Bell's motion. Bell raises a single assignment of error for review in his delayed appeal.

### Assignment of Error

The trial court erred in refusing to instruct the jury on self-defense, in derogation of [Bell's] right to due process of law, as protected by the Fifth and Fourteenth Amendments to the United States Constitution.

## Law and Analysis

{¶ 19} In his sole assignment of error, Bell argues that he met his burden of production, and the trial court abused its discretion by refusing to instruct the jury on self-defense.

{¶ 20} It is within the trial court's broad discretion to determine whether the evidence adduced at trial was sufficient to support a requested jury instruction, and its decision will not be disturbed absent an abuse of that discretion. *State v. Singleton*, 2013-Ohio-1440, ¶ 35 (8th Dist.), citing *State v. Fulmer*, 2008-Ohio-936, ¶ 72. A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *State v. Hill*, 2022-Ohio-4544, ¶ 9, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983); *State v. Palmer*, 2024-Ohio-539, ¶ 22 (holding that a trial court's decision to deny a defendant's request for a self-defense instruction will only be reversed if the trial court's attitude was unreasonable, arbitrary, or unconscionable since it is in the best position to gauge the evidence before the jury).

---

proceeds as any timely appeal would proceed, and the assertion of error is virtually the same as it would have been but for the delayed filing.'" *State v. Dudas*, 2024-Ohio-775, ¶ 11, 15, quoting *State v. Silsby*, 2008-Ohio-3834, ¶ 14.

{¶ 21} The affirmative defense of self-defense is governed by R.C. 2901.05(B)(1), which provides:

> A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

A self-defense claim under R.C. 2901.05(B)(1) includes three elements:

> "(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger."

*State v. Messenger*, 2022-Ohio-4562, ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002).

{¶ 22} Defendants are required to present qualitative, legally sufficient evidence supporting each element of self-defense before the State's burden of persuasion under R.C. 2901.05(B)(1) is triggered. *Palmer* at ¶ 19, quoting *Messenger* at ¶ 19, 25. A defendant's burden of production is satisfied when "'the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant.'" *Id.* at ¶ 20, quoting *id.* at ¶ 22, 25 ("This burden of production is 'not a heavy one and . . . might even be satisfied

through the State's own evidence.'"). Only adequacy is considered when determining whether evidence is sufficient, persuasiveness is not: "The question is not whether the evidence should be believed but whether the evidence, if believed, could convince a trier of fact, beyond a reasonable doubt, that the defendant was acting in self-defense." (Emphasis omitted.) *Id.* at ¶ 21, citing *Disciplinary Counsel v. Smith*, 2017-Ohio-9087, ¶ 23, and *Messenger* at ¶ 25-26. In *Palmer*, the Ohio Supreme Court specifically held that trial courts do not err when they require defendants to present legally sufficient evidence for all elements of self-defense before affording them self-defense jury instructions. *Id.* at ¶ 19.

{¶ 23} After viewing the evidence in a light most favorable to Bell and considering only its adequacy, we find that Bell's self-defense claim was unsupported by sufficient evidence. Based on the record before us, our analysis begins and ends with the affirmative defense's first element: that the defendant was not at fault in creating the situation giving rise to the affray.

{¶ 24} To determine whether a defendant was "at fault" in a self-defense scenario, courts assess, "'in essence, whether the defendant was the initial aggressor.'" *State v. Gillis*, 2024-Ohio-726, ¶ 52 (8th Dist.), quoting *State v. Gardner*, 2022-Ohio-381, ¶ 25 (8th Dist.). Ohio courts, including this one, have held that "'[t]his concept is broader than simply not being the immediate aggressor. [A] person may not . . . voluntarily enter an encounter and then claim a right of self-defense.'" *Id.*, quoting *State v. Nichols*, 2002-Ohio-415 (4th Dist.). Indeed, it is well-established that "'a defendant is at fault in creating the situation giving rise to

the affray when the defendant chooses to confront the victim or knowingly go[es] to a place where the victim will be, even when the defendant's action was otherwise completely lawful.'" *Id.* at ¶ 54, quoting *State v. Elam*, 2022-Ohio-1895, ¶ 15 (12th Dist.).

{¶ 25} While Neighbor and Bell disagree about the fight's cause and the events that transpired after it began, there is no dispute about the physical actions that initiated the altercation: Bell admittedly entered Neighbor's yard with a knife and took the first swing at Neighbor. This fact is consistently presented in the testimony of each witness and is corroborated by Neighbor's security-camera footage. The undisputed evidence establishes that Bell walked from the sidewalk of his front yard to Neighbor's backyard, without permission or invitation, where he chose to confront Neighbor on Neighbor's own property. Regardless of his reasons for doing so — lawnmowing differences or verbal assaults — Bell voluntarily entered an encounter with Neighbor and escalated the dispute. Consequently, the record establishes that Bell was at fault in creating the situation giving rise to this affray among neighbors.

{¶ 26} Since Bell must present legally sufficient evidence for all three elements to receive a self-defense jury instruction — and he has not satisfied his burden of production as to the first — we need not consider the other two elements to resolve this appeal. Based on the record before us, the trial court did not abuse its discretion when it determined that a self-defense jury instruction "[c]learly doesn't apply" and "is not available under the circumstances, even viewed . . . in the

light most favorable to . . . Bell." Accordingly, we cannot say that the trial court acted unreasonably, arbitrarily, or unconscionably when it denied Bell's request for the instruction. Bell's single assignment of error is overruled.

{¶ 27} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
DEENA R. CALABRESE, J., CONCUR