[Cite as *State v. Hameed*, 2025-Ohio-3029.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO,<br><br>  Plaintiff-Appellee,<br><br>- vs -<br><br>ZAA-VON TERELL HAMEED,<br><br>  Defendant-Appellant. | CASE NO. 2024-T-0103<br><br><br>Criminal Appeal from the<br>Court of Common Pleas<br><br><br>Trial Court No. 2024 CR 00382 |

## OPINION AND JUDGMENT ENTRY

Decided: August 25, 2025
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Charles L. Morrow*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Robert T. McDowall, Jr.*, Robert T. McDowall Co., LLC, 415 Wyndclift Place, Youngstown, OH 44515 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1}  Defendant-appellant, Zaa-von Terell Hameed, appeals his conviction of Aggravated Murder following a jury trial in the Trumbull County Court of Common Pleas. The issues before this court are whether defense counsel was ineffective for failing to request a continuance upon being retained one week prior to trial and whether the trial court erred in failing to instruct the jury on the inferior-degree offense of Voluntary Manslaughter.  For the following reasons, we affirm the judgment of conviction.

{¶2}  On May 13, 2024, the Trumbull County Grand Jury issued an indictment, charging Hameed with Aggravated Murder with a firearm specification (Count One), in

violation of R.C. 2903.01(A)&(G) and R.C. 2941.145, and Illegal Possession of a Firearm in a Liquor Permit Premises (Count Two), in violation of R.C. 2923.121(A)&(E). The State later entered a nolle prosequi on Count Two.

{¶3} Hameed was accused of purposely and with prior calculation and design causing the death of Nathaniel Bradley with a firearm on or about May 13, 2024, at Park Place 24 Tavern ("Park Place" or "the bar") in Warren, Ohio.

{¶4} Hameed's appointed counsel engaged in discovery and filed a notice of Hameed's intent to assert self-defense at trial. Hameed subsequently retained counsel, who filed a notice of appearance on November 5, 2024. The trial court allowed Hameed's appointed counsel to withdraw as counsel of record, and a three-day jury trial was held the following week.

{¶5} The State elicited testimony from three police officers, a forensic pathologist, and the manager of Park Place, who was present when the incident occurred. The State also introduced a video compilation of the incident, which was recorded by security cameras at the bar. Hameed called one eyewitness, his girlfriend, who was working as a bartender at Park Place when the incident occurred.

{¶6} Sergeant Trevor Sumption of the Warren City Police Department testified that he was the first officer to arrive at the scene, a few minutes after 2:00 a.m. on May 13, 2024. He encountered the manager, Sheldon Brogdon, who admitted that he had a gun. Sergeant Sumption detained Brogdon, secured the weapon, and waited for backup to arrive before entering the bar. Once inside the bar, Sergeant Sumption found the victim, Nathaniel Bradley, lying on the floor unresponsive. There were "a couple people milling around"—identified as Christopher Murray, Darrelle Williams (Bradley's older

brother), and a female who did not give her name—none of whom were cooperative or responsive to the officers' questions. The individuals were all detained and searched, but other than Brogdon, none of the others had any weapons on their person.

{¶7} Detective Eric Laprocina, a forensic officer for the Warren City Police Department, testified that he processed the crime scene at Park Place. The detective took photographs and collected evidence, including Bradley's cell phone, two cartridge casings, and bullet fragments. A projectile was also recovered from Bradley's clothing during the autopsy. Although they were unable to connect the casings to any specific weapon, investigators were able to conclude that the bullets were not fired from Brogdon's gun. On cross-examination, the detective conceded that he did not test Brogdon's firearm for DNA or fingerprints. Detective Laprocina also described two gunshot wounds on Bradley's body, one to the leg and one to the chest.

{¶8} Detective Laprocina testified that the police department obtained video footage from multiple surveillance cameras located inside and outside the bar. Detective Laprocina spliced the videos together to create a composite, "transition[ing] from one camera vantage to another as you would see it play out," and was able to track the defendant, Hameed, from the time he arrived at the bar until he left. The detective identified several people in the video as it was played for the jury, including Murray; Williams, who was speaking with Brogdon; and Hameed, who initially placed his hands on Williams. The detective testified that from that point "it was a physical altercation that escalated to gunfire. The victim was struck . . . in the leg and his reaction to it . . . put him on the floor. And then [Hameed] walks up to him and fires one more." Detective Laprocina confirmed that the video shows Hameed departing the bar, walking past

Murray, Williams, and Brogdon as he left. The detective also testified that he did not see any other gun in the video. On cross-examination, he conceded that he did not look for any video of Bradley's interactions at the bar prior to Hameed's arrival nor does the video compilation include anything that occurred after Hameed's departure.

{¶9} Sheldon Brogdon testified that on May 13, 2024, he was the manager of Park Place and that he knew everyone who appears in the video compilation—Hameed, Murray, Williams, Bradley (as Williams' younger brother), and Hameed's girlfriend, Casey Gore, who tended bar at Park Place. According to Brogdon, Williams and Hameed "exchanged words," and he "tried to de-escalate it"; "it got out of hand . . . punches were threw [sic]." He could not recall who threw the first punch or whether both sides were throwing punches. Brogdon described, "I'm running to break it up. [Bradley] drops to the ground. . . . I jump over him, and I run to the corner. . . . There was shots fired." Brogdon testified that he did not see Bradley with a gun that night and that no one took a gun from Bradley after he had been shot. Brogdon further testified that the gun he had that night was his own gun and that he was not holding or hiding it for anybody else.

{¶10} The video compilation was played again for the jury while Brogdon was on the stand. Brogdon confirmed that the video shows the following: while he was talking with Williams, Hameed approached and put his hands on Williams; Williams backed up and then punched Hameed, who in turn punched Williams; Murray and Bradley stepped in and threw a couple punches at Hameed, pushing him away from Williams; Murray stopped, while Bradley continued to move forward with Hameed; Bradley then separated from Hameed, and Hameed shot Bradley; Brogdon jumped over Bradley and ran to the

corner; Hameed walked over to Bradley, who was on the ground, and shot Bradley a second time.

{¶11} On cross-examination, Brogdon testified that he was starting the closing routine at the bar when he told Williams to "chill, like, just relax" because Williams was getting in Brogdon's face. Brogdon explained that he was not defensive because "that's how [Williams] gets. I know him pretty well. That's how he gets when he's drunk." Brogdon affirmed that the video shows that when Williams "really" got in his face, Hameed put a hand on Williams to try to get him to calm down; Williams squared up with Hameed and threw the first punch; Hameed punched him back, and Murray and Bradley started to punch Hameed. Brogdon testified that it all happened very fast and that he did not see everything that happened after that point. Defense counsel played for Brogdon another portion of video that was recorded by the security cameras after the shooting. Brogdon identified himself, Williams, Murray, and an unknown female.

{¶12} Dr. George Sterbenz, forensic pathologist for the Trumbull County Coroner's office, testified that he performed the autopsy on Bradley's body. The autopsy demonstrated two firearm wounds, one to the leg and one to the back. Dr. Sterbenz testified that one bullet entered Bradley's left leg below the knee joint and exited in a way "consistent with Mr. Bradley being in a standing position at the time that the injury is inflicted." The other bullet entered the left side of Bradley's back, "perforates the left lung, the heart, and the right lung," and exited the chest cavity on the right side. This bullet was recovered from Bradley's clothing. Dr. Sterbenz testified that the trajectory and exit defect of this second bullet was consistent with "somebody lying on the ground and the chest is pressed up against the ground" and that "Mr. Bradley was lying chest down on

Case No. 2024-T-0103

the ground when he was shot." The doctor testified that the injury to Bradley's heart "caused essentially catastrophic internal bleeding" and that "[i]f he hadn't bled to death rapidly from the gunshot wound to the heart, he had a very significant chance or probability of dying, if not treated, from blood loss from the gunshot wound to the leg." He additionally testified that Bradley was "a very small-framed individual," standing 5'8" tall and weighing 102 pounds.

{¶13} Detective Frank Tempesta with the Warren City Police Department testified as to how they were later able to locate Hameed, whom he described as 6'4" and 285 pounds. He testified that several of the individuals present at the scene were not very cooperative when asked to provide a statement. Brogdon was transported to the police department for an interview and gave the officers consent to retrieve the security-camera footage. From information pertaining to Casey Gore, Hameed's girlfriend, Detective Tempesta eventually determined that Hameed was the suspect and issued a warrant for his arrest. Approximately 12 hours after the murder, Gore's sister called the police department to report Gore missing and in danger. The detective "pinged" Gore's cell phone, which was located near Columbus, Ohio. Hameed was arrested that night in Groveport. Gore did not provide a statement to the detective.

{¶14} At the close of the State's case, a discussion was held on the record regarding proposed jury instructions, subject to modification after the defense's case. The court stated its intent to give a self-defense instruction as requested by defense counsel, and the State indicated its intent to request an instruction on the lesser-included offense of Murder.

{¶15} For the defense's case, Hameed called Gore, his girlfriend, who was tending bar at Park Place the night of the incident. She testified that Hameed picked her up from the bar at the end of her shifts. On this night, Gore testified, Williams was buying a lot of drinks for everyone at the bar and throwing money around. She testified that Williams "is a combative person, period. But if you know him, that's just who he is as a person." According to Gore's testimony, when Brogdon began turning on the lights Williams became combative because he did not want to leave; Hameed intervened and suggested they all go somewhere else to drink; Williams punched Hameed in the face; Hameed punched Williams; and then both Bradley and Murray punched Hameed. Gore testified that she tried to grab Bradley because he was the smallest but that she thought he was reaching for a gun in his pants. She testified: "As soon as he reaches, [Hameed] pushes him backwards and then the first shot was fired. . . . Then I grabbed [Hameed] by his waist. And [Bradley] jumped up a little bit. It seemed like he grabbed his leg. And then he fell to the floor. . . . I have my hands around [Hameed's] waist. And I'm like, 'Come on. You know, like, we got to go. We got to move.' And he [Bradley] was still reaching around. So then [Hameed] shot again." After they left the bar, Gore testified, she and Hameed went to Columbus to see if Hameed's family could help with money or a lawyer that Hameed could use to turn himself in with representation. She also testified that Hameed's jaw was broken in two or three places.

{¶16} On cross-examination, Gore initially denied that Hameed had first placed his hands on Williams. After the video was shown a third time, Gore admitted that Hameed had put his hands on Williams' chest before Williams punched Hameed.

Case No. 2024-T-0103

{¶17}   On re-direct examination, Gore reiterated that she thought Bradley was still reaching for a gun even after he had been shot in the leg and was on the floor.

{¶18}   The defense rested.  The trial court provided jury instructions on Aggravated Murder, the lesser-included offense of Murder, and self-defense.  Neither party objected or requested any additional instructions.

{¶19}   On November 15, 2024, after two days of deliberations, the jury found Hameed guilty of Aggravated Murder and the accompanying firearm specification.  A sentencing hearing was held on November 26, 2024, and the sentence was journalized on December 4, 2024.  The court sentenced Hameed to life imprisonment with parole eligibility after 20 years and a mandatory 3-year sentence for the firearm specification, resulting in an aggregate sentence of 23 years to life.

{¶20}   Hameed timely appealed and asserts two assignments of error, styled as "propositions of law":

> [1.] The failure of Defendant's counsel retained one week prior to an aggravated murder jury trial to move for a continuance and thereafter proceeding to a trial constituted ineffective assistance of counsel in violation of the Sixth Amendment [to] the United States constitution and Article 1, Section 10 of the Ohio constitution.

> [2.] The trial court committed reversible error when it failed to instruct the jury on the mitigating defense of sudden passion or fit of rage (provocation) and the consequent offense of voluntary manslaughter.

{¶21}   In his first assignment of error, Hameed argues that he was denied his constitutional right to effective assistance of counsel because his retained counsel, who entered a notice of appearance nearly six months after the indictment had been filed and only one week prior to the scheduled jury trial, failed to move for a continuance to review and otherwise prepare the case.  Hameed asserts that his retained counsel "lacked

Case No. 2024-T-0103

sufficient time to not only prepare the case for trial but to also independently investigate the case and to effectively challenge the State's scientific evidence."

{¶22} To prevail on a claim of ineffective assistance of counsel, Hameed must show that defense counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance. *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Ohio courts presume that every properly licensed attorney is competent, and therefore a defendant bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100 (1985).

{¶23} There is no evidence in the record that Hameed's retained counsel was hindered in his performance by his late appearance in this case. Specifically, nothing in the record supports Hameed's allegation that his retained counsel failed to adequately or independently investigate the evidence in the case. Counsel represented to the trial court that he would either be prepared to proceed to trial or would request additional time, filed motions and proposed jury instructions, questioned jurors during voir dire and exercised peremptory challenges, presented the self-defense theory of the case during opening statements, cross-examined the State's witnesses, conducted direct examination of Hameed's witness, and gave a closing argument. Hameed also has not demonstrated that he was prejudiced by his retained counsel's late appearance or level of preparedness; in other words, he has not demonstrated a reasonable probability that the outcome at trial would have been different had counsel requested a continuance. *See State v. Bradley*, 42 Ohio St.3d 136, 142 (1989), quoting *Strickland* at 694 (a "reasonable probability" means "sufficient to undermine confidence in the outcome").

Case No. 2024-T-0103

{¶24} The record does not support Hameed's claim of ineffective assistance of counsel. Any assertion that there is evidence outside the record that supports his claim must be brought in a petition for postconviction relief. *See State v. Adams*, 2005-Ohio-348, ¶ 66 (11th Dist.) ("The fact that an appellant raised ineffective assistance of counsel claims in a direct appeal does not bar such a claim in a petition for postconviction relief, provided the claim in the postconviction exercise is predicated upon evidence outside the record.").

{¶25} Accordingly, Hameed's first assignment of error is not well taken.

{¶26} In his second assignment of error, Hameed argues that the trial court committed reversible error by failing to instruct the jury on "sudden passion or sudden fit of rage" and the consequent offense of Voluntary Manslaughter. He asserts that despite some courts noting that claims of both self-defense and sudden fit of rage are "somewhat contradictory," a jury may have reasoned that Hameed shot Bradley because he believed that Bradley was armed *and* that Hameed was in a sudden fit of rage because Williams "threw the first punch" and then Murray and Bradley "both attacked."

{¶27} Voluntary Manslaughter, an inferior-degree offense of Aggravated Murder, occurs when a person knowingly causes the death of another "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." R.C. 2903.03(A). A defendant charged with Aggravated Murder is entitled to an instruction on Voluntary Manslaughter when the evidence presented at trial would reasonably support both an acquittal on the charged crime of Aggravated Murder

and a conviction for Voluntary Manslaughter. *State v. Tyler*, 50 Ohio St.3d 24, 36-37 (1990).

{¶28} On the first day of trial Hameed filed proposed jury instructions, which included the following:

SUDDEN PASSION OR SUDDEN FIT OF RAGE

> If you find that the defendant did not act in self-defense or defense of another, you are to consider whether, at the time of the offense, the defendant acted knowingly while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by Nathaniel Bradley that was reasonably sufficient to incite the defendant into using deadly force.

At the close of the State's case, however, Hameed requested only a self-defense instruction. And at the close of trial, Hameed neither requested a "sudden passion or sudden fit of rage" instruction nor objected to its exclusion.

{¶29} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30(A). However, an appellate court may notice "[p]lain errors or defects affecting substantial rights . . . although they were not brought to the attention of the [trial] court." Crim.R. 52(B). Accordingly, Hameed has forfeited his argument save for plain-error review. To show plain error, Hameed must demonstrate that "an error occurred, that the error was obvious, and that there is 'a reasonable probability that the error resulted in prejudice,' meaning that the error affected the outcome of the trial." (Emphasis deleted.) *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, quoting *State v. Rogers*, 2015-Ohio-2459, ¶ 22.

{¶30} Here, there was insufficient evidence elicited at trial that Hameed was acting under sudden passion or in a sudden fit of rage. *See State v. Mack*, 82 Ohio St.3d 198,

201 (1998) ("Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage."). And there was no evidence to reasonably support a conclusion that Hameed was sufficiently provoked to use *deadly* force against Bradley, a man half his size, after Bradley punched Hameed in defense of Williams. *See State v. Shane*, 63 Ohio St.3d 630, 635 (1992) (the provocation to use deadly force must be sufficient to arouse the passions of an ordinary person beyond his or her control); *see also State v. Scales*, 2024-Ohio-2171, ¶ 48 (8th Dist.) (getting punched and knocked to the ground was not sufficient provocation to warrant the use of deadly force).

{¶31} Moreover, Hameed's trial strategy, from opening statement to closing argument, was that he shot Bradley in self-defense. Gore, Hameed's girlfriend, testified that she thought Bradley was reaching for a firearm even after he had been shot in the leg and was on the ground, and defense counsel argued that Hameed acted out of fear for his and Gore's safety. It is reasonable to conclude that this "all or nothing" defense was a tactical decision to avoid Hameed's conviction of a homicide offense. When the failure to request a jury instruction is the result of a deliberate, tactical decision on the part of trial counsel, it is not plain error for the trial court not to give the instruction. *State v Kiehl*, 2016-Ohio-8543, ¶ 30 (11th Dist.), citing *State v. Hubbard*, 2013-Ohio-2735, ¶ 35 (10th Dist.), citing *State v. Clayton*, 62 Ohio St.2d 45, 47-48 (1980). Accordingly, Hameed cannot successfully claim on appeal that it was plain error for the trial court to exclude an instruction on the inferior-degree offense of Voluntary Manslaughter. *See State v. Ryan*, 2018-Ohio-2600, ¶ 125-126 (11th Dist.).

{¶32} For these reasons, Hameed's second assignment of error is without merit.

Case No. 2024-T-0103

{¶33}   We therefore affirm the Trumbull County Court of Common Pleas' judgment of conviction entered against Hameed.

ROBERT J. PATTON, P.J.,

SCOTT LYNCH, J.,

concur.

Case No. 2024-T-0103

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

JUDGE MATT LYNCH

PRESIDING JUDGE ROBERT J. PATTON,
concurs

JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.